## S90A0471. BATTON v. THE STATE.
(391 SE2d 914)

CLARKE, Chief Justice.

Appellant was sentenced to two consecutive life sentences for the murder and armed robbery of Lincoln Lindburgh Tanner and to terms of years, to run concurrently with the life sentences, for burglary and theft by taking of a motor vehicle belonging to Tanner. [1] The state sought the death penalty in this case, but the jury hopelessly deadlocked during the sentencing phase, and the judge declared

---

[1] The crime was committed December 21, 1987. Appellant was indicted February 8, 1988. After a trial by jury the appellant was convicted February 18, 1989, and sentenced February 24, 1989. The transcript was certified October 20, 1989. A motion for new trial was denied November 27, 1989, and a notice of appeal was filed December 15, 1989. The appeal was docketed in this court January 9, 1990, and submitted for opinion March 9, 1990.

a mistrial and sentenced appellant to life for the murder.

The victim, appellant's employer, was killed on his blueberry farm in Bacon County on December 21, 1987. His death was caused by knife and blunt instrument wounds to the head. He also sustained numerous stab wounds. His tan pickup truck, approximately $250 in cash, a television set, microwave oven, and a .25 automatic pistol were taken from his house.

Appellant was identified at trial as the person who had arrived December 21, 1987, at a motel in Jacksonville, Florida, driving a tan pickup truck with blood and a blood-covered butcher knife inside. There was testimony that he also had in his possession a television set, a small chrome automatic pistol, and about $100 in cash. The witness who discovered the knife in the truck testified that she knew the truck was stolen. When she asked whether appellant had killed the truck's owner, he responded "I didn't mean to." The witness eventually called police.

After receiving his *Miranda* rights, appellant gave a statement admitting that he killed the victim to obtain money to buy crack cocaine. He said that on the afternoon of December 20, 1987, the victim paid him $20 for work done on his farm and that he used it to buy crack. Later that night he returned to the victim's farm to get money to buy more crack. The victim discovered appellant using cocaine outside his house, and an argument followed in the area of the tractor shed. Appellant stated that he hit the victim with a wrench or some other piece of equipment which comes off a tractor. He knew that he had killed the victim but stated that he did not remember anything after this. He did not mention the involvement of anyone else. Type A blood consistent with the victim's blood was found on shoes and other items in appellant's possession.

At trial appellant denied killing the victim. According to appellant's brief, he tried to show that Willie Linder, Sr., was responsible for the murder. There is some indication that his counsel tried to develop an alternative theory that the murder was committed by a man named John Dunson, nicknamed "Pumpkin" or "Punkin." There was testimony that Dunson was dead at the time of appellant's trial.

Appellant testified that he had gone to the victim's house in a borrowed car with Dunson to pick up $20 in wages which the victim owed him. Appellant and Dunson bought some liquor and began drinking and looking for a woman. Appellant testified that he went to the house of a woman named Helen Smith, that someone gave him two pills, and that he went to sleep. He testified that he awoke in Jacksonville sitting on the passenger side of the victim's truck without knowing that there had been a murder.

Willie Linder, Sr., testified that after smoking crack cocaine with him in the early evening of December 20, 1987, appellant returned

around midnight and borrowed his truck. He said appellant returned after about thirty minutes with under $100 in cash and about five checks in his hand. He testified that appellant also had a small .25 automatic pistol and that appellant asked Linder to go to Jacksonville with him to "get rid of . . . some VCR and guns." Linder said that he took appellant onto a dirt road toward Waycross and that appellant jumped out of the window of the truck as he slowed down.

The court refused to allow the five-year-old Willie Linder, Jr., to testify. Appellant contends that the child would have testified that appellant was asleep in Willie Linder, Sr.'s truck at the time of the murder. The court also refused to allow the defense to reopen the case to allow a neighbor of the victim to testify as to words that he had heard spoken on the night of the murder.

1. Reviewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found appellant guilty of the crime for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant, who is a black male, contends that the court erred in denying his objection to the state's striking three black women from the jury. He insists that this was reversible error under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The three jurors had each known appellant and his family. Two of these jurors said they would have trouble signing a death verdict if foreperson. The third said that she would have trouble imposing a death sentence. One of the three had relatives who had "trouble with the law." The state argues that appellant failed to make out a prima facie case of racial discrimination as required by *Batson*. Without conceding a prima facie case of discrimination, the state points out that during voir dire it gave racially neutral reasons for striking the three jurors. The record shows that three black females were stricken and six white males. One black male was a member of the jury which convicted appellant. Appellant has not put forth evidence of the racial makeup of the county or the venire. Pretermitting the question of the existence of a prima facie case of discrimination, we find that the state had a specific and racially neutral reason for striking each juror. See, e.g., *Foster v. State,* 258 Ga. 736 (374 SE2d 188) (1988), cert. denied, 109 SC 2110 (1989).

3. Appellant contends that the trial court erred in denying his motion to suppress items seized at the time of his arrest. The items complained of were items of clothing belonging to the victim. Appellant also insists that the shoes he was wearing, which the officers took from him after they took him into custody, should have been suppressed. According to appellant, the question of the legality of the seizure of the clothing of the victim turns on a construction of OCGA

§ 17-5-1, which provides that:

> ... a peace officer may reasonably search the person arrested and the area within the person's immediate presence for the purpose of . . . [d]iscovering or seizing the fruits of the crime for which the person has been arrested.

Since the items seized in the room where appellant was arrested were believed to be clothing belonging to the victim, they were possible fruits of the crime. A more difficult question is whether they were seized within the appellant's immediate presence. However, we need not decide how far the immediate presence of the appellant extended at the time of his arrest because the items seized were within plain view of the officers at the time of the arrest. Under the line of decisions beginning with *Coolidge v. New Hampshire*, 403 U. S. 443 (91 SC 2022, 29 LE2d 564) (1971), evidence in plain view of officers who are conducting a search incident to an arrest may be seized even though the evidence is not located within the area of the arrestee's person and immediate control. Id. at 446-66, n. 24.

We find no error in the warrantless search of the shoes taken from appellant at the sheriff's office and later introduced into evidence. Property which the arrestee elects to take with him to jail is subject to search under analysis similar to that allowing search incident to an arrest. *United States v. Edwards*, 415 U. S. 800 (94 SC 1234, 39 LE2d 771) (1974); *Abel v. United States*, 362 U. S. 217 (80 SC 683, 4 LE2d 668) (1960). See also *Williams v. State*, 258 Ga. 80 (365 SE2d 408) (1988).

The removal and analysis of appellant's shoes did not violate his right against self-incrimination. A defendant may be compelled to submit so that certain evidence may be produced against him so long as his presence is all the cooperation required. For example, a defendant may be compelled to submit to a line-up, fingerprinting, the removal of evidence from his clothing, and even the removal of evidence such as a bullet from his body. The defendant's right against self incrimination is not violated even though the production of such evidence may have incriminatory results. See, e.g., *Creamer v. State*, 229 Ga. 511 (192 SE2d 350) (1972) (bullet removed from the body of accused); *Johns v. State*, 180 Ga. 187 (178 SE 707) (1935) (shoes removed from accused who was in custody for comparison with footprints); *Hill v. State*, 161 Ga. 188 (129 SE 647) (1925) ("beggar lice" discovered on accused's underclothes when he removed his outer garments while in custody found admissible); *Drake v. State*, 75 Ga. 413 (1885) (clothing taken from defendant admissible).

4. Appellant enumerates as error the state's failure to produce an unmatched fingerprint found at the crime scene in response to appel-

lant's *Brady* motion. This enumeration is without merit. In response to appellant's motion, the trial court made an in camera inspection and found nothing exculpatory in the state's file. Following an in camera inspection, the appellant has the burden of showing that the material sought was both material and favorable. *Williams v. State*, 251 Ga. 749 (312 SE2d 40) (1983). Appellant has not met his burden of showing how the presence of an unmatched fingerprint at the scene of the crime could be favorable to his defense. His contention that the fingerprint *might* have matched that of Willie Linder, Sr., or John Dunson is pure speculation. The fact that there is a fingerprint at a crime scene which does not belong to the accused is neither exculpatory nor inculpatory.

5. In his next enumeration of error, appellant insists that Willie Linder, Jr., who was approximately five years old at the time of the trial in February 1989, should have been allowed to testify. The state contends that the court correctly ruled that under OCGA § 24-9-5, which provides that children who do not understand the nature of the oath are incompetent to testify, Willie Linder, Jr., was incompetent. The trial court has discretion to determine whether a child knows and appreciates the obligation to tell the truth so that he is competent within the meaning of OCGA § 24-9-5. *Hill v. State*, 251 Ga. 430 (306 SE2d 653) (1983); *Lancaster v. State*, 250 Ga. 871 (301 SE2d 882) (1983). The child was examined at length by the court outside the presence of the jury and by counsel for the state and the defendant. The court found that he was inattentive and not responsive. The court also found that there were inconsistencies in the testimony of the child. Although the child said that he understood that he must tell the truth and that he would be "in big trouble" if he did not, he was not able to say what the "big trouble" might entail. At one point he said that his mother had told him to tell the story he was telling about how "Punkin" killed the white man while "Garon" (appellant) slept in Willie Linder, Sr.'s truck. We find no abuse of discretion in the court's refusing to allow the child to testify.

6. Appellant enumerates as error the trial court's refusal to reopen the case after it was closed and the jury had been charged to allow the jury to hear testimony of George Lacy Wilson. According to appellant's attorney, Mr. Wilson came forward after the case was closed, having been present during the entire trial, and told him that he had information about the case. Mr. Wilson testified that from his house located about one-fourth to one-half mile away from the house of the victim, he had overheard two black men in conversation and then heard someone he thought to be the victim scream "George" and also say "Don't hit me anymore," or words to that effect. He also said that the GBI and the deputy sheriff had interviewed him about the victim's murder and that he had not given this information to them

or, indeed, to anyone else. He said that he had not come forward because he felt negligent in not responding to the victim's cry for help. He testified that in 1985 he had been sent to Central State Hospital in Milledgeville, Georgia for psychiatric evaluation and had spent three months in the hospital there. He said that he had offered information to the sheriff regarding the Wayne Williams case. He told the sheriff that he had seen in a dream that the murderer of black children in Atlanta was a white man with large clear glasses. The court refused to allow Wilson to testify before the jury because it found that he was incompetent and unreliable. The court based its decision not only on the past mental and emotional problems of the witness but also on his demeanor in the courtroom and on the witness stand. The determination as to competency of a witness is within the discretion of the court. The trial court's decision will be overruled only for abuse of discretion. *Lancaster v. State*, supra. We find no abuse of discretion here.

7. Finally, appellant insists that the trial court erred in refusing to grant a directed verdict in his favor on the charge of armed robbery. We found in Division 1 of this opinion that the evidence in this trial was sufficient to meet the requirement of *Jackson v. Virginia*, supra, and that the evidence was sufficient to support the verdict. There was no error in the refusal to grant a directed verdict on the charge of armed robbery.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 25, 1990.

*John R. Thigpen, Sr.,* for appellant.

*Harry D. Dixon, Jr., District Attorney, George E. Barnhill, Assistant District Attorney, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf,* for appellee.