## S05A1729. MARKS v. THE STATE.
### (623 SE2d 504)

THOMPSON, Justice.

A jury convicted Nicholas Marks of multiple violations of OCGA § 30-5-8 (a) (1) (unlawful to abuse, neglect, or exploit elder persons); OCGA § 15-19-51 (a) (7) (unauthorized practice of law to use title of attorney when one is not a duly licensed attorney); and other crimes stemming from the financial exploitation of Leonard Stewart. Via motions to dismiss the indictment, Marks challenged the constitutionality of OCGA § 30-5-8 (a) (1) on vagueness and equal protection grounds, and the constitutionality of OCGA § 15-19-51 (a) (7) on First Amendment grounds. The trial court upheld the constitutionality of OCGA § 30-5-8 (a) (1) on equal protection grounds, and the constitutionality of OCGA § 15-19-51 (a) (7) on First Amendment grounds. Marks has appealed to this Court, asserting various constitutional claims, and enumerating other issues on appeal. Finding no error, we affirm.

In early March 2004, Leonard Stewart, an 89-year-old widower, was dining alone in a restaurant in DeKalb County, Georgia, when he was approached by a woman who invited him to join her and her male

---

companion at their table.[1] The two introduced themselves to Mr. Stewart as Anne and Ron Russo (hereinafter "Marks"[2]), and claimed to be niece and uncle. An employee of the restaurant recalled the encounter and he described the woman as "very attractive" in her "early 50's, late 40's." Marks identified himself as an attorney, and the three chatted for about an hour.

Over the next few weeks, Marks spent six or eight hours a day with Mr. Stewart. During that time, Marks offered to do legal work in exchange for Mr. Stewart's 1990 automobile. Mr. Stewart signed the title document and relinquished control of the vehicle to Marks. Marks drove Mr. Stewart to various banks where Marks identified himself to bank employees as Mr. Stewart's attorney, and caused Mr. Stewart to close certain joint accounts and reopen them as individual accounts, and to remove certain items of jewelry from his safety deposit box and to give that jewelry to Marks. Mr. Stewart testified that he gave his credit cards to Marks "to loan him a few dollars"; instead, Marks charged approximately $15,000 worth of goods to those cards without authorization. In addition, Marks used Mr. Stewart's credit card to send a $5,700 Western Union money order to Marks' relative, Sam Marks, in Illinois.

Mr. Stewart's friend, Beth Barnett, had been cosignatory on his bank accounts, and stock holdings for the past several years. Mr. Stewart had conveyed an undivided one-half interest in his home property to her some years earlier. In addition, she held his power of attorney and was named as executrix and primary beneficiary under Mr. Stewart's will. Marks convinced Mr. Stewart to obtain a temporary protective order against Ms. Barnett, remove her from his bank accounts, and revoke her power of attorney. Marks also persuaded Mr. Stewart to make a new will, "temporarily" naming Marks' daughter, Rachel Marks, as executrix and sole beneficiary. Marks retained an attorney and he took Mr. Stewart to that attorney's office for the purpose of drafting the new will.[3] At Marks' request, the attorney also prepared a quitclaim deed purporting to transfer to Mr. Stewart, all of Ms. Barnett's interest in his home property, as well as a renunciation of the power of attorney to Ms. Barnett. Marks subsequently forged Ms. Barnett's signature on the quitclaim deed and then had the forged signature notarized unlawfully.

---

[1] Mr. Stewart testified under oath for the State and was cross-examined by Marks' attorney at a bond hearing which took place on March 30, 2004. Mr. Stewart died within months of that hearing, and prior to the trial of this case. His sworn testimony at the bond hearing was introduced into evidence at Marks' trial.

[2] Ron Russo is an alias used by appellant; his proper name is Nicholas Marks.

[3] That will was never executed because Marks was arrested in the interim.

Also during these few weeks, Marks' associate, "Anne Russo," had dinner with Mr. Stewart on two occasions. After that, she proposed marriage to him and asked him to move into her new home in Florida. Marks also took Mr. Stewart to a Ford dealership where he persuaded Mr. Stewart to make a $500 down payment on a new Ford Thunderbird automobile for Anne, and to sign a buyer's agreement to pay the $34,000 balance in cash.

When Ms. Barnett and the officers at Mr. Stewart's bank became suspicious of Marks' conduct, they contacted the DeKalb Solicitor-General's office, which quickly initiated an investigation. On March 18, 2004, Marks drove Mr. Stewart to the Horizon Bank in Mr. Stewart's Oldsmobile. Marks approached a bank officer, identified himself as Mr. Stewart's attorney, and requested that a cashier's check be issued on Mr. Stewart's account. The police immediately arrested Marks. He had in his possession a briefcase which contained: the forged quitclaim deed which he had filed in the Superior Court of DeKalb County; the revoked power of attorney; approximately 40 blank checks from Mr. Stewart's account at SunTrust Bank; Mr. Stewart's original will naming Ms. Barnett as executrix and beneficiary; and a statement from Mr. Stewart's securities account at SunTrust Bank showing a value of $151,185.60. The executed title to Mr. Stewart's Oldsmobile was found in the vehicle. Marks signed a *Miranda* waiver and told the police that he was a retired attorney from Connecticut, and he denied knowing anyone named Anne.

1. In several enumerations of error, Marks asserts that the evidence against him was insufficient under the standard of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) Marks was charged by indictment with four counts of violating OCGA § 30-5-8 (a) (1) (exploitation of an elder person) of the "Disabled Adults and Elder Persons Protection Act," OCGA § 30-5-1 et seq. The Act defines "elder person" as an individual "65 years of age or older who is not a resident of a long-term care facility." OCGA § 30-5-3 (7.1). "Exploitation" is defined as "the illegal or improper use of a disabled adult or elder person or that person's resources for another's profit or advantage." OCGA § 30-5-3 (9). The indictment charged that Marks did unlawfully exploit Leonard Stewart, an elder person, by: taking Mr. Stewart to an attorney for the purpose of changing his will; influencing Mr. Stewart to wire more than $5,000 to Sam Marks by Western Union; taking Mr. Stewart to a Ford dealership where he signed a contract to purchase a Thunderbird automobile; taking Mr. Stewart to Horizon Bank where Mr. Stewart removed jewelry from his safety deposit box and gave that jewelry to Marks; and taking possession of the title to Mr. Stewart's Oldsmobile. As recited above, the evidence was sufficient for a rational juror to

conclude beyond a reasonable doubt that Marks exploited Mr. Stewart for his own profit or advantage, as defined by OCGA § 30-5-3 (9), and to find Marks guilty beyond a reasonable doubt of the crimes of exploitation of an elder person. *Jackson v. Virginia*, supra.

(b) The evidence was also sufficient under *Jackson v. Virginia*, supra, to support the convictions of four counts of OCGA § 15-19-51 (a) (7) (unlawful for any person other than a duly licensed attorney to use the title of "attorney" to convey the impression that he is entitled to practice law).

(c) Marks was charged with theft by deception, OCGA § 16-8-3, in that he obtained Mr. Stewart's Oldsmobile by deceitful means by taking possession of the vehicle and title in payment for legal services when Marks was not an attorney. Marks submits that the evidence failed to establish the completed crime of theft by deception because title was never signed over to a transferee and because the vehicle ultimately was returned to Mr. Stewart. The evidence established that Marks caused Mr. Stewart to sign the title, and that Marks took possession and control of the vehicle in exchange for "legal work." The evidence of theft by deception was sufficient under *Jackson v. Virginia*, supra.

Marks also submits that the State failed to prove the value of the vehicle, and that therefore, he was improperly punished for a felony. OCGA § 16-8-12 (a) (5) (A) provides, however, that when the item taken is a motor vehicle greater than $100 in value, a felony sentence is authorized regardless of proof of value. See also *Jackson v. State*, 267 Ga. 130 (3) (475 SE2d 637) (1996) and *Norwood v. State*, 265 Ga. App. 862 (1) (b) (595 SE2d 537) (2004) (under OCGA § 16-8-12 (a) (5) (A), the State does not have to prove value when the subject of the theft is a motor vehicle). Marks concedes that there was evidence valuing the vehicle at "a couple of hundred bucks." Accordingly, Marks was properly punished for a felony.

(d) The evidence was sufficient under the standard of *Jackson v. Virginia*, supra, to support the count of forgery of the purported quitclaim deed.

2. Marks filed a pretrial motion to suppress the contents of his briefcase. Evidence adduced at a suppression hearing showed that Marks was arrested pursuant to a warrant, and was taken to the DeKalb County jail for booking. Detective Hasan arrived at the jail and requested that Marks be brought from the holding area so that he could be transported to the police station. The detective thought it "odd" that Marks had a briefcase in his possession after having been booked. As Marks was being placed in the patrol car, the detective took possession of the briefcase as incident to his arrest, and also "inventoried [the contents] for safety purposes." Among Mr. Stewart's

various financial documents, the briefcase also contained the forged quitclaim deed, which formed the basis for a forgery charge.

"Property which the arrestee elects to take with him to jail is subject to search under analysis similar to that allowing search incident to an arrest." *Batton v. State*, 260 Ga. 127, 130 (3) (391 SE2d 914) (1990), citing *United States v. Edwards*, 415 U. S. 800 (94 SC 1234, 39 LE2d 771) (1974). See also OCGA § 17-5-1 (a) (3), (4) (when lawful arrest is effected, police may search arrestee and the immediate area to discover the fruits of the crime, or articles which may have been used in the commission of the crime). It follows that the trial court properly denied the motion to suppress. *Batton*, supra.

3. The trial court properly refused to allow Marks to impeach a State's witness with a first offender conviction. "[U]nless there is an adjudication of guilt, a witness may not be impeached on general credibility grounds by evidence of a first offender record." *Matthews v. State*, 268 Ga. 798, 802 (4) (493 SE2d 136) (1997).

4. Marks asserts that OCGA § 30-5-8 is unconstitutionally vague and ambiguous. Although Marks mounted a constitutional challenge to the elder abuse statute on vagueness grounds in the trial court, that court determined that Marks had no standing to assert such a challenge because he failed to show that the statute as applied to his conduct, adversely impacted him.[4] Citing *Dowis v. State*, 243 Ga. App. 354, 355 (533 SE2d 434) (2000) ("one whose own conduct may be constitutionally proscribed will not be heard to challenge a law because it may conceivably be applied unconstitutionally to others"), quoting *Hubbard v. State*, 256 Ga. 637, 638 (352 SE2d 383) (1987), the court declined to address the merits of the vagueness challenge. The court expressly stated, "Hence, the court need not address the merits of defendant's principal constitutional attack [on vagueness grounds]."

Marks does not complain about the standing ruling on appeal;[5] he addresses only the merits of the vagueness challenge. This Court, however, "will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point." *Haynes v. Wells*, 273 Ga. 106, 108 (3) (538 SE2d 430) (2000). As early as *Savannah F. & W. R. Co. v. Hardin*, 110 Ga. 433, 437 (35 SE 681) (1900), this Court affirmed the principle that it "should never pass upon the constitutionality of a legislative act unless it clearly

---

[4] The challenge proffered in the trial court and argued on appeal is that the language of OCGA § 30-5-3 (9) which defines "exploitation" as "the illegal or improper use of . . . [an] elder person or that person's resources for another's profit or advantage" is so vague that it fails to put a defendant on notice as to what type of conduct will constitute a violation of the statute, and also punishes innocent conduct. As discussed in Division 1 (a), supra, Marks' indictment expressly set forth the acts which were alleged to have violated the statute.

[5] We express no opinion as to the propriety of that ruling.

appears in the record that the point was . . . distinctly passed on by the trial judge." In *Vandiver v. Williams*, 218 Ga. 60 (1) (126 SE2d 210) (1962), as in the case now before the Court, the trial court declined to reach the merits of a constitutional challenge, finding that the party asserting the challenge lacked standing to raise it. The *Vandiver* Court held: "The ruling of the trial court that [a party] has no status or right to challenge the constitutionality of [a statute] does not raise a question of which the Supreme Court . . . has jurisdiction." Id. at 61. See also *Statesboro Pub. Co. v. City of Sylvania*, 271 Ga. 92 (516 SE2d 296) (1999) (Carley, J., dissenting); *Martin v. State*, 195 Ga. App. 548 (1) (394 SE2d 551) (1990); *Lockaby v. City of Cedartown*, 151 Ga. App. 281, 282 (259 SE2d 683) (1979) (where there was no ruling on a constitutional claim in the trial court, "the constitutional question cannot be considered on appeal"). As is dictated by more than a century of our jurisprudence, the vagueness argument cannot be considered on appeal. *Haynes*, supra; *Vandiver*, supra.

Marks also mounted a constitutional challenge to OCGA § 30-5-8 on equal protection grounds, and the trial court expressly upheld the constitutionality of the statute on that basis. However, Marks fails to enumerate that ruling as error on appeal, or to support any such claim with argument or citation of authority. We therefore deem the claim abandoned under Supreme Court Rule 22. *Mundy v. State*, 259 Ga. 634 (8) (385 SE2d 666) (1989).

5. Marks asserted below that OCGA § 15-19-51 (a) (7) unconstitutionally limits free speech in violation of the First Amendment to the Federal Constitution, and Art. I, Sec. I, Par. V of the Georgia Constitution.[6] In denying this challenge, the trial court correctly determined that Marks does not have a First Amendment right to engage in speech which is calculated to deceive or mislead people into thinking he is qualified to practice law. See *Central Hudson Gas &c. Corp. v. Pub. Svc. Comm.*, 447 U. S. 557, 566 (100 SC 2343, 65 LE2d 341) (1980) (for commercial speech to come within the protections of the First Amendment, "it at least must concern lawful activity and not be misleading"); *Falanga v. State Bar of Ga.*, 150 F3d 1333, 1337, n. 11 (11th Cir. 1998). See also Art. I, Sec. I, Par. V of the Georgia Constitution ("Every person may speak . . . on all subjects but shall be responsible for the abuse of that liberty.").

---

[6] Marks also argues on appeal that OCGA § 15-19-51 (a) (7) is void for vagueness. The trial court, however, did not rule on that point below; therefore, it will not be considered on appeal. *Haynes*, supra at 108 (3).

The right to practice law is a special privilege conferred by the State. *Sharp-Boylston Co. v. Haldane*, 182 Ga. 833 (187 SE 68) (1936) (Russell, C. J., dissenting). This Court has decreed that the legal process

> must be projected through the courts according to estab-lished practice by lawyers who are of high character, skilled in the profession, dedicated to the interest of their clients, and in the spirit of public service. In the orderly process of the administration of justice, any retreat from those prin-ciples would be a disservice to the public.

*Eckles v. Atlanta Technology Group*, 267 Ga. 801, 805 (2) (485 SE2d 22) (1997). Marks' argument that he had a First Amendment right to hold himself out as an attorney is wholly specious.

*Judgment affirmed. All the Justices concur, except Sears, C. J., and Carley, J., who concur specially.*

CARLEY, Justice, concurring specially.

I concur in affirmance of the judgment, but write separately to address the issue of Marks' constitutional challenge to OCGA § 30-5-8 (a) (1) on vagueness grounds. In Division 4, the majority states that the trial court "expressly declined to address the merits" of the attack on the constitutionality of the statute because Marks lacked standing, and it then holds that Marks has waived his right to make the vagueness argument by failing to "complain about the standing ruling on appeal; he addresses only the merits of the vagueness challenge." Majority opinion, p. 74. I do not agree that waiver applies, because, contrary to the majority's analysis, the trial court did not actually "decline" to address the merits of Marks' contention based upon his lack of standing. Instead, I believe that the trial court's conclusion that Marks lacked standing was a ruling on the merits of his vagueness challenge to the statute. Since the trial court ruled on the merits, so must we.

The rule is that " '(o)ne to whose conduct a statute clearly applies may not *successfully* challenge it for vagueness.' [Cit.]" (Emphasis supplied.) *Hill v. State*, 263 Ga. 37, 44 (14) (427 SE2d 770) (1993). However, success and standing are not synonymous. "A party has standing to challenge the constitutionality of a statute if the statute has an adverse impact on that party's own rights. [Cit.]" *State of Ga. v. Jackson*, 269 Ga. 308, 310 (1) (496 SE2d 912) (1998). Having been charged with a violation of OCGA § 30-5-8 (a) (1), Marks certainly had standing to urge that that statute is unconstitutionally vague. The success of his attack is an entirely different consideration.

OCGA § 30-5-8 (a) (1) provides, in relevant part, that "it shall be unlawful for any person to . . . exploit any disabled adult or elder

person." According to OCGA § 30-5-3 (9), "exploitation" means "the illegal or improper use of a disabled adult or elder person or that person's resources for another's profit or advantage."

> A statute . . . is unconstitutionally vague only if it fails to convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices," [cits.] so that "persons of common intelligence (need not) necessarily guess at its meaning (nor) differ as to its application." [Cit.]

*Franklin v. State*, 279 Ga. 150, 151 (1) (611 SE2d 21) (2005). Because Marks' vagueness challenge did not involve any First Amendment right, its success or failure is dependent upon

> the application of the [statute] in light of the conduct to which it is applied in this case. [Cits.] "(A) person 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.' (Cits.)" [Cit.]

*Thelen v. State*, 272 Ga. 81 (526 SE2d 60) (2000). Here, the trial court apparently determined that Marks lacked standing because, as worded, OCGA §§ 30-5-3 (9) and 30-5-8 (a) (1) are sufficient to give a person of ordinary intelligence notice that the specific acts which the indictment alleged that he committed were instances of proscribed conduct. "In general, any word or phrase used in [a statute] that has a commonly understood meaning is sufficiently definite to satisfy due process requirements, and thus is not considered vague. [Cit.]" *Franklin v. State*, supra. Therefore, the trial court essentially held that Marks' constitutional attack was without merit *as applied to him*, and that he lacked standing to challenge the constitutionality of the statute as applied to the hypothetical conduct of another accused. "[O]ne whose own conduct may be constitutionally proscribed will not be heard to challenge a law because it may conceivably be applied unconstitutionally to others. [Cits.]" *Hubbard v. State*, 256 Ga. 637, 638 (352 SE2d 383) (1987).

The majority mistakenly assumes that the holding in any decision which addresses the issue of standing can be applied indiscriminately in every case, even one which involves the right to assert a completely different constitutional attack. Standing vel non is not a general concept, but depends upon the relationship between the party attacking the constitutionality of the statute and the nature of the challenge he advances. Thus, reliance on *Vandiver v. Williams*, 218 Ga. 60 (1) (126 SE2d 210) (1962) as support for the waiver theory

is clearly misplaced here, since that case does not involve a constitutional challenge to a criminal statute on vagueness grounds. Compare also *Haynes v. Wells*, 273 Ga. 106, 108 (3) (538 SE2d 430) (2000); *Martin v. State*, 195 Ga. App. 548 (1) (394 SE2d 551) (1990); *Lockaby v. City of Cedartown*, 151 Ga. App. 281 (259 SE2d 683) (1979). The majority concedes that the trial "court determined that Marks had no standing to assert such a challenge because he failed to show that the statute as applied to his conduct, adversely impacted him." Majority opinion, p. 74. What the trial court obviously meant by this is that OCGA § 30-5-8 (a) (1) was not unconstitutionally vague as applied to him. Where, as here, the freedom of speech is not involved, we have always considered such a ruling to be a determination that a vagueness challenge lacks merit, because an accused can only attack the statute on that ground based upon its application to his own conduct and not upon the hypothetical conduct of others. *Thelen v. State*, supra; *Hubbard v. State*, supra; *Dowis v. State*, 243 Ga. App. 354, 355 (533 SE2d 43) (2000). Thus, notwithstanding any additional comments made by the trial court, the substance of its ruling was not a complete refusal to address the merits of Marks' vagueness challenge. Instead, by predicating its ruling on the lack of standing and citing *Dowis v. State*, supra, the trial court distinctly held that the vagueness challenge was without merit to the extent that Marks had standing to raise the issue. Compare *Haynes v. Wells*, supra; *Vandiver v. Williams*, supra; *Martin v. State*, supra; *Lockaby v. City of Cedartown*, supra.

As the majority notes, Marks does not complain about the standing ruling on appeal, but he does address the merits of his vagueness challenge. Of course, a vagueness challenge, as applied to Marks, is precisely the issue that he raised below and that the trial court ruled on. Therefore, he has not waived his vagueness argument on appeal. However, we should address the merits of that argument, and affirm the trial court's holding that, insofar as Marks' conduct is concerned, OCGA § 30-5-8 (a) (1) is not unconstitutionally vague simply because the "application of the statute's standards sometimes requires an assessment of the surrounding circumstances to determine if [it] is violated . . . . [Cits.]" *State v. Boyer*, 270 Ga. 701, 703 (1) (512 SE2d 605) (1999).

I am authorized to state that Chief Justice Sears joins in this special concurrence.

DECIDED DECEMBER 1, 2005.

*Teddy R. Price*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Leonora Grant, Assistant District Attorneys*, for appellee.