

# NUMBER 13-22-00038-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOANIE MARTINEZ COSPER,                                    Appellant,

v.

THE STATE OF TEXAS,                                            Appellee.

## On appeal from the 377th District Court
## of Victoria County, Texas.

# OPINION

### Before Justices Longoria, Silva, and Peña
### Memorandum Opinion by Justice Peña

Appellant Joanie Martinez Cosper appeals her convictions for one count of misapplication of fiduciary property with a value of $150,000 or more but less than $300,000, and one count of exploitation of an elderly individual. *See* TEX. PENAL CODE ANN. §§ 32.45(c)(6), 32.53(b), (c). Both offenses were enhanced by reason of a prior felony conviction, with Cosper being found guilty of a first-degree felony for misapplication

of fiduciary property and a second-degree felony for exploitation of an elderly person. *See id.* §§ 32.45(d), 12.42(a). A jury found Cosper guilty as charged in the indictment and the trial court sentenced her to forty years' imprisonment as to count one and twenty years' imprisonment as to count two, to be served concurrently. As to count one, Cosper argues that there was insufficient evidence to show that she misapplied fiduciary property or that the misapplication was in excess of $150,000. As to count two, Cosper argues that there was insufficient evidence to show that she made illegal or improper use of the resources of the complainant, Myrl Cosper, who was eighty-seven years old on the date alleged in the indictment. We affirm in part, reverse in part, and render a judgment of acquittal as to the charge of misapplication of fiduciary property.

## I. BACKGROUND

Cosper was hired as a caregiver on March 24, 2020 by the company Senior Helpers. As part of her employment, Cosper was placed in the home of Norma Jean Cosper, for whom she was to provide caretaking services for, including help with ambulation, feeding, giving medication reminders, and light housekeeping. Senior Helpers had been hired by Norma Jean's husband, Myrl. Senior Helpers soon became aware that Myrl was asking several of the caretakers from Senior Helpers assigned to Norma Jean to work privately, in violation of company policy and procedures.

Nineteen days after being hired, on April 12, 2020, Cosper effectively ended her employment with Senior Helpers, citing a family medical emergency. Senior Helpers soon became aware that Cosper had in fact accepted private employment from Myrl to care for Norma Jean. Myrl and Norma Jean's daughter, Carol Davis, who lived in the neighborhood next to her parents with her husband Paul Davis, would visit her mother at

2

home while Cosper was working, unaware of Cosper's private employment arrangement. It was not until Cosper contacted Carol telling her that she had been fired from Senior Helpers that Carol and Paul became aware that Senior Helpers was no longer providing services for Norma Jean. At first, although Carol and Paul found this situation problematic, they knew that Myrl got along with only a few people, and they were happy that at least Myrl had found somebody he liked to care for Norma Jean.

Carol soon became concerned with the entire arrangement when she noticed an unusual $5,000 cash withdrawal from Myrl's Wells Fargo bank account, which he shared with Carol and Norma Jean. Soon after, Myrl transferred the remaining balance from this account, amounting to $45,296.34, to a new Wells Fargo account opened only in his name. Bank records show that on this new Wells Fargo account multiple in-store cash withdrawals were made throughout the year 2020, including a cash withdrawal of $28,000 in June, a total of $16,500 cash withdrawals in July, $7,500 cash withdrawals in August, $15,000 cash withdrawals in September, and a $5,000 cash withdrawal in October. Also, during this time, there were multiple transfers from Myrl's Edward Jones investment account into his new Wells Fargo account, including a $25,000 transfer on June 30, 2020, and a $78,480.61 transfer the following month.

On August 3, 2020, Carol filed an application for guardianship of Myrl, citing her fear that he was unable to safely drive and noting that on April 9, 2020, Myrl's doctor, Dr. Henry Grant, diagnosed Myrl with "severe" dementia. A few weeks after Carol's guardianship application was filed, Myrl hired attorney Leslie Werner to draft the following documents: a statutory durable power of attorney naming his daughter Leslie Holmes as initial agent and Cosper as successor agent; a medical power of attorney naming Cosper

3

as initial agent and Leslie Holmes as successor agent; and a new will that no longer had Norma Jean as the sole beneficiary, but instead named Holmes as sole beneficiary with Cosper as successor beneficiary. Around that same time, Myrl saw another doctor, Dr. Eliezer Castaneda, who examined Myrl and diagnosed him within the cognitive range of "normal older adult" and as having "early dementia." Shortly thereafter, at the end of the month, Carol dismissed her guardianship suit.

On October 21, 2020, Norma Jean died. Sixteen days later, Cosper and Myrl were married on November 6th, and on November 9th, Cosper was added to Myrl's new Wells Fargo account. From the date of their marriage until the end of November, in-store cash withdrawals were made from the Wells Fargo account totaling $41,500. And in December, there was a $10,777 in-store cash withdrawal from the account. Also, on November 10th, Myrl hired Werner to prepare the following documents: a statutory durable power of attorney naming Cosper as initial agent and Holmes as successor agent; a gift deed giving Cosper an undivided one-half interest in Myrl's residence in Inez, Texas (Inez property), valued at approximately $332,310; and a new will naming Cosper as sole beneficiary, with Holmes as successor beneficiary.

The State further presented evidence that around this same time, Cosper and Myrl went to Edward Jones with their marriage certificate so that she could be added to his investment account as a beneficiary. Myrl's financial advisor at Edward Jones, Robert Gomez, testified that because he knew that Myrl's wife had just died, Gomez alerted his field supervisor, and the account was frozen the next day. He also contacted Adult Protective Services. According to Gomez's testimony, Cosper later came to his office with

4

a "Power of Attorney"[1] and attempted to liquidate the assets in the investment account but was unable to because the account had been frozen. Cosper further attempted to gain authorization to liquidate by having Myrl call Gomez and by showing Gomez a prerecorded video of Myrl in a hospital bed telling Gomez to liquidate the account. At the time of the attempted liquidation, Gomez stated that there was around $300,000 in the investment account but noted that he could not "recall" precisely.

Two of the $10,000 November withdrawals triggered suspicious activity reports, and along with Carol contacting the authorities, lead to an investigation of Cosper and her eventual arrest. During this time period, in December of 2020, Carol again filed an application for guardianship of Myrl and also filed and received a temporary restraining order against Cosper. After her arrest, Cosper deeded back her interest in the Inez property to Myrl.

At trial, the State presented the bank records from both of Myrl's Wells Fargo accounts for the relevant time periods. These records only show the date of the withdrawals, the amount withdrawn, and describe the transaction as "Withdrawal Made in A Branch/Store." The State did not provide any evidence of Cosper's own bank activity. Lead Investigator Anthony Daniel of the Victoria County Sherriff's Office affirmed that he did not obtain any evidence as to who made the in-store cash withdrawals from Wells Fargo, or where that money went. When asked whether he could "produce any documents to the jury that say[] [Cosper] withdrew that [$]150,000" as alleged, Investigator Daniel answered "No." Additionally, Myrl was not called to testify as to whom

---

[1] The statutory durable power of attorney under which Cosper was initial agent only came into effect upon Myrl's disability or incapacity. *See* TEX. EST. CODE ANN. § 751.0021(a)(3) (requiring that a durable power of attorney include language addressing the consequence of disability or incapacity of the principal).

5

withdrew the money or where it went, as his dementia diagnosis rendered him incapacitated. The State, however, presented two checks made from Myrl to Cosper during the month of August 2020, totaling $3,020. The State also presented evidence that shortly after the $28,000 cash withdrawal in June of 2020, Cosper purchased a Toyota RAV4 for $25,900, and paid in cash. Myrl reportedly told Investigator Daniel that Myrl withdrew the money so that Cosper could purchase a vehicle. Gomez also testified that when Myrl separately transferred $25,000 and $78,480 in late June of 2020 out of his Edward Jones account, that the money was for a "new vehicle."

A jury found Cosper guilty as charged in the indictment and the trial court sentenced her to forty years' imprisonment on count one and twenty years' imprisonment on count two, to be served concurrently. This appeal followed.

## II.    STANDARD OF REVIEW

"Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence." *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). Evidence is legally sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Joe v. State*, 663 S.W.3d 728, 731–32 (Tex. Crim. App. 2022) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under a legal sufficiency review, we view the evidence in the light most favorable to the verdict, while recognizing that "[t]he trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts." *Id.* at 732.

6

We measure the evidence produced at trial against the essential elements of the offense as defined by a hypothetically correct jury charge. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

### III.     DISCUSSION

### A.     Misapplication of Fiduciary Property

Cosper argues that the evidence presented at trial was insufficient because she was neither a "fiduciary," nor did she "misapply" property, as those terms are defined in the statute of conviction. *See* TEX. PENAL CODE ANN. § 32.45(a)(1), (2). Cosper further argues that even if the State did prove her fiduciary status and misapplication, the evidence was insufficient to prove that the property misapplied was in excess of $150,000. Under a hypothetically correct jury charge, the State must prove beyond a reasonable doubt that Cosper (1) intentionally, knowingly, or recklessly, (2) misapplied (3) property she held as a fiduciary or property of a financial institution, (4) in a manner that involves substantial risk of loss, (5) to the owner of the property or to a person for whose benefit the property is held. *Id*. § 32.45(b); *see Skillern v. State*, 355 S.W.3d 262, 268 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (defining the elements of misapplication of fiduciary property). Because we find that the State presented insufficient

evidence of misapplication, we assume without deciding that Cosper was a fiduciary for the relevant time periods relied upon by the State.

A person "misapplies" fiduciary property when he or she "deal[s] with property contrary to: (A) an agreement under which the fiduciary holds the property; or (B) a law prescribing the custody or disposition of the property." TEX. PENAL CODE ANN. § 32.45(a)(2); *see id.* § 31.01 (5)(C) (noting that money is considered "property" under the penal code); *see also Deal*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining the verb "deal" as "to distribute (something)," "to transact business with (a person or entity)," or "to conspire with (a person or entity)" (cleaned up)). The State does not argue that Cosper's actions violated any statute. *See* TEX. PENAL CODE ANN. § 32.45(a)(2)(B). For example, the State does not allege that any of Cosper's actions violate the Texas Probate Code. *See Black v. State*, 551 S.W.3d 819, 822 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (affirming conviction of appellant who was indicted for violating the "Texas Probate Code, Durable Power of Attorney Act").[2] Thus, for each alleged instance of misapplication, the State had the burden to prove that (1) Cosper and Myrl had an agreement as to how she was to use the property, and (2) Cosper's actions violated that agreement. *See Skillern*, 355 S.W.3d at 268. "Agreement" means "the act of agreeing or coming to a mutual agreement; a harmonious understanding; or an arrangement (as between two or more parties) as to a course of action." *Bynum v. State*, 711 S.W.2d 321,

---

[2] The Texas Probate Code imposes affirmative duties on an attorney in fact to "inform and to account for actions taken [pursuant to] the power of attorney." TEX. EST. CODE ANN. § 751.101. Such affirmative duties imposed by law are especially relevant where, as here, the State alleges that a complainant's diminished capacity complicates his or her ability to enter into an agreement at all, as required by the alternative subsection of the statute. *See* TEX. PENAL CODE ANN. § 32.45(a)(2)(A).

8

323 (Tex. App.—Amarillo 1986), *aff'd*, 767 S.W.2d 769 (Tex. Crim. App. 1989) (citation omitted).

For several of the alleged acts of misapplication, the evidence is insufficient because the State's evidence shows that Cosper was, in fact, acting *in accordance* with a "mutual agreement," "harmonious understanding," or "an arrangement" with Myrl. *Id*. A major piece of evidence in the State's case was Myrl's withdrawal of $28,000 in June of 2020 and Cosper's subsequent cash purchase of a vehicle for $25,900. Myrl reportedly told Investigator Daniel that he gave Cosper the money for the express purpose of purchasing the vehicle. He also told Gomez that the money taken out of his investment account was for a "new vehicle."

Another critical piece of evidence in the State's case was the gift deed transfer of an undivided one-half interest in the Inez property, which was valued at $332,310. Both the cash and the interest in the Inez property were gifts, and thus, the State cannot show that Cosper acted contrary to an agreement under which she held the property, nor even that she "held" such property, as a fiduciary or otherwise. *See* TEX. PENAL CODE ANN. § 32.45(a)(2)(A); *see also Bailey v. State*, No. 03-02-00622-CR, 2003 WL 22859984, at *5 (Tex. App.—Austin Dec. 4, 2003, pet. ref'd) (mem. op., not designated for publication) (noting that the evidence could not show that appellant, who was accused of coercing victim to deed over property to her, "held [property] in any capacity, fiduciary or otherwise," because the victim alone held title to the property and is the one who signed the deed transferring his own interest in the property).

Likewise, the State cannot rely on any monetary interests that Cosper arguably may have gained when Myrl named her as a beneficiary or agent under various legal

9

documents to demonstrate an actionable misapplication of property. Again, the voluntary nature of Myrl's actions show that Cosper was acting in accordance with an agreement with Myrl. Each relevant power of attorney and testamentary document was prepared by Werner who testified that she prepared each document at Myrl's request. Further, Gomez testified that Myrl came into his office with Cosper so that she could be added as a beneficiary on his investment account. Thus, the State cannot show that Cosper's actions were contrary to any agreement with Myrl, *see* TEX. PENAL CODE ANN. § 32.45(a)(2)(A), and the State's misapplication claim necessarily fails.[3]

For the remainder of the alleged acts of misapplication of fiduciary property, the evidence is insufficient because the State failed to prove that Cosper and Myrl had any agreement at all as to how to use the property. The State argues that the in-store cash withdrawals from Wells Fargo satisfy the statute. The State failed to show, however, that Cosper and Myrl had entered into any agreement as to how that money was to be used, or proof that she acted contrary to any such agreement. In *Skillern*, the State alleged that appellant misapplied her grandfather's money that he had in a joint banking account with appellant, and

> The only evidence of a written agreement that the State presented at trial to support its contention that appellant owed an established duty to [her grandfather] under an agreement or statute and handled the money in contravention of that agreement was the fact that appellant was a joint owner of the Joint Account with [her grandfather], that [her grandfather]'s checks were the only funds deposited into the account, and that appellant

---

[3] Such actions may have supported a conviction for fraudulent securing of document execution. *See* TEX. PENAL CODE ANN. § 32.46. This statute criminalizes "caus[ing] another person . . . to sign or execute any document affecting property or service or the pecuniary interest of any person." *Id.* § 32.46(a)(1). The statute further provides that "[c]onsent is not effective if: (A) induced by deception or coercion; (B) given by a person who by reason of youth, mental disease or defect, or intoxication is known by the actor to be unable to make reasonable property dispositions; or (C) given by a person who by reason of advanced age is known by the actor to have a diminished capacity to make informed and rational decisions about the reasonable disposition of property." *Id*. § 32.46(d)(3).

10

> paid several of [her grandfather]'s bills . . . while spending other money on her own bills.

355 S.W.3d at 268.

Despite testimony from witnesses that they understood appellant to have "taken over" her grandfather's finances, the court of appeals in *Skillern* concluded that such testimony, together with the lack of evidence of any agreement between the appellant and her grandfather, was insufficient to support conviction and concluded that "the record contains no evidence probative of the element of misapplication of property under an agreement." *Id*. at 270. Likewise, here, the State failed to present any evidence that Cosper and Myrl entered into an agreement under which she held the funds in their joint bank account. *See* TEX. PENAL CODE ANN. § 32.45(a)(2)(A).

This same logic applies with equal force to any reliance by the State on Cosper's attempt to liquidate Myrl's Edward Jones account. The State failed to present any evidence that Cosper and Myrl had an agreement as to how the funds in the Edward Jones account were to be used, or that Cosper acted contrary to any such agreement under which she held the property. *See id*. Further, even if we were to conclude that Cosper in fact "held" the property at all, such property was never at "a substantial risk of loss." TEX. PENAL CODE ANN. § 32.45(b); *see Black*, 551 S.W.3d at 831 (finding substantial risk of loss of fiduciary property where appellant used power of attorney to "initiate" the transfer of money online from the victim's bank account to purchase various things online for her and her family, which the State supported by showing the charges made and corresponding amounts, but where the bank canceled the online transactions); *Demond v. State*, 452 S.W.3d 435, 460 (Tex. App.—Austin 2014, pet. ref'd) (finding that misapplication was "complete" when appellant "authorized . . . funds to be transferred");

11

*see also United States v. Cauble*, 706 F.2d 1322, 1354 (5th Cir. 1983) (noting that under the federal offense of willful misapplication of bank funds, "the crime is complete at the time the misapplication occurs," and that "[t]he gravamen of the offense . . . is the defendant's depriving the bank of its right to have custody of its funds") (citation omitted).

For all the above reasons, we find that the State failed to present sufficient evidence to support conviction for misapplication of fiduciary property. We sustain Cosper's first issue.[4]

## B.      Exploitation of an Elderly Individual

Cosper argues that there was insufficient evidence to support her conviction for exploitation of an elderly individual. *See* TEX. PENAL CODE ANN. § 32.53. To find her guilty of this offense, the State was required to prove beyond a reasonable doubt that (1) Cosper (2) intentionally, knowingly, or recklessly (3) caused the exploitation of (4) Myrl, an elderly person, (5) by illegally or improperly (6) using Myrl or his resources (7) for monetary or personal benefit, profit, or gain. *See id*. § 32.53(a), (b). We note that this offense has no monetary threshold, and thus any instance of exploitation will uphold a conviction for count two.

The State failed to present any evidence that Cosper illegally used Myrl's funds, such as would be the case if there were proof that she made the in-store cash withdrawals

---

[4] We note that after Cosper was arrested, the Legislature created a new penal offense: financial abuse of an elderly induvial. *See* TEX. PENAL CODE ANN. § 32.55. This new offense does not require proof of a fiduciary relationship, only that the individual "has a relationship of confidence or trust with the other person." *Id*. § 32.55(a)(3). The statute then enumerates several classes of individuals who are deemed to have "a relationship of confidence or trust with the other person," including "a paid or unpaid caregiver of the other person." *Id*. § 32.55(b)(5). The statute further creates "a rebuttable presumption that any transfer, appropriation, or use of an elderly individual's money or other property by a person described by Subsection (b)(5) is wrongful . . . if it is shown on the trial of the offense that the actor knew or should have known that, at the time of the offense, the elderly individual had been diagnosed with dementia, Alzheimer's disease, or a related disorder." *Id*. § 32.55(f).

before being added to Myrl's account and without his authorization. Thus, the State must show that Cosper "improper[ly] use[d]" Myrl or his resources "for monetary or personal benefit, profit, or gain." *Id*. § 32.53(a)(2). The statute does not define the term "improper," and so we interpret that phrase in accordance with its plain meaning. *See Ex parte Valdez*, 401 S.W.3d 651, 655 (Tex. Crim. App. 2013) ("We construe a statute in accordance with the plain meaning of its text unless the plain meaning leads to absurd results that the legislature could not have possibly intended."). "'Improper' is commonly defined as 'not in accord with propriety, modesty, good manners, or good taste,' or 'not in accordance with good manners, modesty, or decorum; unbecoming, unseemly; indecorous, indecent[.]'" *United States v. Stagno*, 839 Fed. Appx. 112, 114 (9th Cir. 2020) (citing *Improper*, OXFORD ENGLISH DICTIONARY (2nd ed. 1989)).

The evidence shows that Myrl withdrew $28,000 on June 17, 2020, when he was eighty-six years old. On that same day, Cosper purchased a vehicle. Myrl reportedly told Investigator Daniel that he withdrew the money so that Cosper could purchase the vehicle. Gomez also testified that the large sums of money transferred out of Myrl's investment account were for "a new vehicle." This evidence was sufficient for a rational trier of fact to conclude that (1) Cosper (2) received a monetary benefit or gain (3) from Myrl, an elderly individual. *See* TEX. PENAL CODE ANN. § 32.53(a); *see also Marks v. State*, 280 Ga. 70, 72, 623 S.E.2d 504, 507 (2005) (finding sufficient evidence of exploitation under Georgia's exploitation of an elder person statute, which is substantially similar to the Texas statute,[5] based on evidence that the appellant persuaded the elderly victim to

---

[5] Both Georgia and Texas law define "exploitation" similarly. In Georgia, it is a felony to knowingly and willfully exploit an elder person, where the statute defines "exploitation" as "the illegal or improper use of a disabled adult or elder person or that person's resources through undue influence, coercion, harassment, duress, deception, false representation, false pretense, or other similar means for one's own

13

make a down payment on a new Ford Thunderbird on behalf of a co-conspirator, to sign a buyer's agreement to pay the balance in cash, and where the appellant took possession of the title to the victim's Oldsmobile, among other evidence).

The State's evidence also showed that the $28,000 gift to Cosper ran contrary to Myrl's typical behavior, as several witnesses testified that Myrl was self-conscious and conservative with his finances. Moreover, on April 9, 2020, more than two months prior to Myrl's $28,000 gift to Cosper, Dr. Grant diagnosed Myrl with "severe" dementia, finding that his cognitive deficits rendered him unable to: "[m]ake complex business, managerial, and financial decisions"; "[m]anage a personal bank account"; "[s]afely operate a motor vehicle"; "[v]ote in a public election"; "[m]ake decisions regarding marriage"; "[d]etermine [his own] residence"; "[a]dminister [his] own medications on a daily basis"; or to consent in medical, psychological or psychiatric treatment. Notably, several months after the funds for the vehicle were purportedly gifted to her, Cosper contacted multiple persons, including Dr. Castaneda, seeking to have Myrl deemed incompetent and committed.

Thus, a jury could conclude that Cosper "intentionally, knowingly, or recklessly cause[d] the exploitation" of Myrl by *improperly* influencing Myrl in his diminished capacity at the time he provided her with the funds to purchase the vehicle. *See* TEX. PENAL CODE ANN. § 32.53(a)(2) (defining "exploitation"); *see also Escamilla v. State*, 344 Ga. App. 654, 656, 811 S.E.2d 77, 79 (2018) (finding sufficient evidence of "improper influence" under Georgia's exploitation of an elder statute where the evidence showed that appellant assisted the victim, who suffered from dementia, in removing large sums from the victim's account and to write a check for cash to her as a gift and where the evidence showed

---

or another's profit or advantage." GA. CODE ANN. § 30-5-3; *see Bell v. State*, 362 Ga. App. 631, 633, 869 S.E.2d 576, 578–79 (2022).

14

that the victim "had never before given such a large monetary gift," among other evidence).

Finally, Cosper's necessary mental state may be inferred from the circumstantial evidence presented by the State. *See Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) ("[C]ircumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt."); *Duntsch v. State*, 568 S.W.3d 193, 216 (Tex. App.—Dallas 2018, pet. ref'd) (noting that proof of mental state will almost always depend upon circumstantial evidence); *Walter v. State*, 581 S.W.3d 957, 972 (Tex. App.—Eastland 2019, pet. ref'd) (noting that mental state is a fact question to be determined by the jury from all the circumstances). When reviewing the sufficiency of evidence as to intent, "we should look at 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012) (citation omitted).

The State presented the following evidence relevant to Cosper's intent in taking the $28,000 gift from Myrl to purchase a vehicle: proof that Cosper received training from Senior Helpers covering the topic of exploitation prior to accepting the gift, including her acknowledgment she understood that "[e]xploitation means improper use of [a] client's funds, property, or assets"; proof that Cosper violated the terms of her employment in order to work for Myrl privately, quitting only nineteen days after being hired; proof that Cosper lied to Senior Helpers when she resigned, stating falsely that she had a "family emergency"; proof that when Senior Helpers was caring for Norma Jean multiple

15

caregivers were assigned to her, but after Cosper was hired to work privately she was the only person to provide care; testimony from Carol and Paul that after Myrl hired Cosper to work privately they had less access to Myrl and thought he was acting differently; testimony from neighbor Sheila Alvarez that Cosper did not act like an employee around Myrl and acted as though "she was the woman of the house"; testimony that Cosper contacted multiple persons, including Dr. Castaneda, seeking to have Myrl deemed incompetent and committed; and an overall course of conduct that included being named a beneficiary on Myrl's investment account, his will, being given medical power of attorney and general power of attorney, and attempting to liquidate his investment account.

The "cumulative effect" of this evidence was sufficient for a rational trier of fact to conclude that Cosper acted with the requisite intent. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) ("Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction.") (citation omitted); *see also Law v. State*, 349 Ga. App. 823, 824, 824 S.E.2d 778, 781 (2019) (finding sufficient evidence of intent under Georgia's exploitation of an elder statute where the State presented evidence that the appellant, knowing that the victim suffered from dementia, "isolated his mother from other family members, took control of her life and finances, and personally gained from doing so to the detriment of" other family members, including executing several legal documents naming the appellant as the mother's attorney in fact, the executor of her estate, and transferring title in her residence over to the appellant, among other evidence).

To the extent Cosper argues that the conviction for count two must be overturned because the State failed to prove that she was a fiduciary, such proof is not a necessary

16

element of the offense and the State abandoned such language from the indictment, with approval from the trial court. *See* TEX. PENAL CODE ANN. § 32.53(a)(2). Finally, Cosper argues that after her marriage to Myrl, any funds she allegedly misappropriated would be considered "community property." However, we need not address this argument because we conclude the gift money from Myrl to Cosper to purchase a vehicle could have served as the basis of the conviction, which occurred prior to Cosper and Myrl's marriage. *See* TEX. R. APP. P. 47.1 (requiring the court of appeals to "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal"). Appellant's second issue is overruled.

## IV. CONCLUSION

We affirm in part, reverse in part, and render a judgment of acquittal as to the charge of misapplication of fiduciary property.

L. ARON PEÑA JR.
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
26th day of January, 2024.

17