Melissa Ann SKILLERN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–07–00997–CR, 01–07–01011–CR, 01–07–01012–CR, 01–07–01013–CR, 01–07–01014–CR, 01–07–01015–CR.

Court of Appeals of Texas, Houston (1st Dist.).

June 23, 2011.

Rehearing En Banc Overruled Aug. 17, 2011.

Discretionary Review Refused March 7, 2012.

Rosa Alexander Eliades, Houston, for Appellant.

John J. Harrity III, Gail Kikawa McConnell, Asst. Dist. Atty's, Richmond, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Melissa Ann Skillern, was convicted by a jury of a single count of misapplication of fiduciary property valued between $20,000 and $100,000 from an elderly person.[1] The jury assessed her punishment at fifty-four months' confinement and a $10,000 fine and recommended that the prison term be suspended. The trial court pronounced the sentence in accordance with the jury's verdict, suspended appellant's prison term for ten years, and set the conditions of appellant's community supervision, which included $24,000 in restitution and 90 days in jail. In twelve issues, appellant asks us to determine whether (1) the trial court erred in not conducting a hearing pursuant to *Batson v. Kentucky*; (2) the trial court erred in overruling objections to the State's questions regarding appellant's attorney-client privileged communications; (3) and (4) the evidence was legally and factually insufficient to prove appellant misapplied greater than $20,000 of fiduciary property when she transferred money from the joint account into her bank account; (5) the trial court violated appellant's right to present a defense by refusing to allow her to present relevant testimony regarding the nature of the joint account agreement, the authority she had over the complainant's money, and her character; (6) the trial court erroneously overruled appellant's objections to the State's improper jury argument; (7) the trial court erred in refusing a "mistake of fact" instruction; (8) the trial court erred in sustaining the State's objection to appellant's definition of recklessness during voir dire; (9) appellant was denied due process and a fair trial due to the prosecutor's conduct at trial; (10) appellant was denied a fair trial as a result of judicial bias; (11) the trial court erred in failing to refer appellant's motion to recuse during its consideration of the motion for new trial; and (12) the trial court erred in overruling appellant's objection to the State's comment on her Fifth Amendment right to remain silent.

We reverse the judgment of the trial court and render a judgment of acquittal.

## Background

At the end of 2001 or the beginning of 2002, appellant's grandfather, Kenneth Skillern ("Kenneth"), was admitted into Silverado Senior Living Houston, Inc. ("Silverado"). Silverado is an assisted-living facility specializing in the care of people with some sort of dementia.

---

1. *See* TEX. PENAL CODE ANN. §§ 32.45(b), (c)(5), (d); 22.04 (Vernon 2003).

When Kenneth was first admitted to Silverado, his bills were paid by his daughter-in-law, Peggy Skillern ("Peggy"), appellant's mother. Because there was a finite amount of money and some concern about how long Kenneth could afford to stay at Silverado, Charlotte Wilson, a social worker employed by Silverado, aided Peggy in securing health-care benefits from the U.S. Veteran's Administration ("V.A."). The V.A. benefits, along with Social Security and pension payments, were deposited directly into Kenneth's bank account, which Peggy held jointly with Kenneth (the "Joint Account"). In June 2003, appellant was added as an owner of the Joint Account. The Joint Account provided for a right of survivorship such that, upon the death of one joint owner, the funds in the account became the property of the surviving owner of the account.

Peggy died in the spring of 2004. After several of Kenneth's scheduled payments to Silverado became past due, Wilson referred the case to Adult Protective Services ("APS"). Sheryl Norman, an investigator with APS, began an investigation of the matter. Based upon the results of that investigation, she contacted Detective Stepp of the Missouri City Police Department. Detective Stepp investigated Norman's allegation that appellant was not paying her grandfather's bills. Following Detective Stepp's investigation, appellant was indicted on several counts of theft and misapplication of fiduciary property.

At trial, the prosecutor asked Rhonda Lowery, accounting manager for Silverado, who had taken over Kenneth's account with Silverado after Peggy died. She testified that appellant took over. Lowery further testified that after that time, appellant made three payments on Kenneth's account, totaling $8,000, but that $22,000 of Kenneth's bills to Silverado were unpaid.

She tried to contact Kenneth's family by certified letter to get the matter resolved, but the letters were returned.

Wilson also testified that, after Peggy Skillern's death, she understood that appellant was in charge of Kenneth's finances. On cross-examination, however, Wilson testified that as far as she knew, appellant had never signed anything that reflected that she was the responsible party. Wilson tried to telephone appellant several times over a matter of months. Wilson testified that she was eventually able to speak to appellant and inquire about the past due bills. According to Wilson, appellant told her that checks had been stolen from the bank account and that she was "trying to get it fixed."

Lowery also testified that, two months after appellant's phone conversation with Wilson, appellant told Lowery that "some checks were stolen." Neither Wilson nor Lowery heard from appellant again. Wilson testified that, because she was concerned that Kenneth might be discharged from the facility or cut off from getting his medication, she recommended calling APS.

Detective Stepp, the police officer who took over the investigation from APS, also testified on behalf of the State regarding her investigation of appellant. Detective Stepp discovered that Kenneth's V.A. and Social Security benefits were being deposited into the Joint Account on which appellant was a joint owner and that appellant was withdrawing money from that account and depositing it into her personal account. Detective Stepp testified that, from November 10, 2003 through September 13, 2004, the time period alleged in the indictment, appellant transferred more than $32,000 from the Joint Account to her personal account. She further testified that appellant had no primary income during that time. Detective Stepp testified that during that time appellant paid $8,000 to-

wards Kenneth's expenses at Silverado. She also reviewed the bank records and concluded that appellant spent more than $16,500 from her personal account on herself during that time frame. Detective Stepp testified that the remaining $15,500 spent during that time could have been expended for Kenneth's benefit. Detective Stepp further testified that appellant held the same rights and privileges to the money in the Joint Account as Kenneth.

The only document pertaining to the financial relationship between Kenneth and appellant that was admitted into evidence was the application for joint ownership of account signed by Kenneth, Peggy, and appellant. None of the witnesses in this case testified that they had seen or knew about any document, other than this application, signed by Kenneth or appellant concerning an agreement between Kenneth and appellant. None of the witnesses testified that Kenneth had specifically entered into any agreement with appellant concerning the use of his monies.

Dr. Dawn Nguyen testified as to Kenneth's increasing dementia. Her first notes on the subject were dated March 2002, close to the time Kenneth was admitted to Silverado. She testified that dementia can diminish a person's mental capacity to make a decision. Wilson, the social worker at Silverado, testified that Silverado was a specialty assisted-living facility dedicated to caring for people who have some type of dementia. According to Wilson, only people who have a diagnosis of dementia-related problems can live there. Norman, the investigator with APS, testified that she met with Kenneth and asked him if he knew what was going on with his finances. She testified that he initially told her that his son was handling his finances, but later stated that perhaps it was his granddaughter. She further testified that the staff at Silverado had told her that Kenneth had dementia and that she knew that only people with dementia were allowed to live at that facility.

Michael Skillern, appellant's brother, testified that the family tried to help each other out regarding their finances. He further testified that his mother took over the family finances after his grandmother died and that his sister took over after their mother died. Kenneth always recognized him and the family and never seemed confused about who he was talking to. He testified that Kenneth would never have discussed his finances with a stranger. He also testified that there was never a threat that Kenneth was going to be evicted from Silverado.

### Appellate Cause Nos. 01–07–01011–CR, 01–07–01012–CR, 01–07–01013–CR, 01–07–01014–CR, and 01–07–01015–CR

■ The indictment charged appellant with a total of six offenses of theft and misapplication of fiduciary property. Appellant was tried on all six counts under one cause number in the trial court. The jury convicted appellant only of count III, misapplication of fiduciary property valued between $20,000 and $100,000 from an elderly person. The judgment from which appellant appeals reflects only that conviction.

Upon the filing in this Court of appellant's notice of appeal from her single conviction, the clerk of the court assigned appellate cause number 01–07–00997–CR to that appeal. The clerk also assigned five additional appellate cause numbers to the five other counts listed in the indictment: counts I, II, IV, V, and VI. The judgment of the trial court, however, does not contain any convictions for counts I, II, IV, V, or VI. Accordingly, we have no

jurisdiction over these counts.[2] *See Workman v. State*, 170 Tex.Crim. 621, 343 S.W.2d 446, 447 (Tex.1961) (dismissing defendant's appeal of judgment discharging defendant from charge because it was not a judgment of conviction). We therefore dismiss appellate cause numbers 01–07–01011–CR, 01–07–01012–CR, 01–07–01013–CR, 01–07–014–CR, and 01–07–01015–CR for lack of jurisdiction.

## Appellate Cause Number
## 01–07–00997–CR

Appellant raises twelve challenges to her conviction for misappropriating fiduciary property. Two issues challenge the sufficiency of the evidence and the remaining issues relate to alleged trial errors at the voir dire, guilt-innocence, punishment, and post-judgment phases of trial. We first address appellant's third issue—the sufficiency of the evidence to establish misappropriation of fiduciary property.

In her third issue, appellant argues that the evidence was insufficient to prove that she misapplied greater than $20,000 of fiduciary property when she transferred money from the Joint Account into her personal bank account. Specifically, she argues that the evidence was insufficient to establish (1) a fiduciary relationship between Kenneth and herself; (2) the existence of an agreement under which she held property and under whose terms she misapplied the property; (3) the required mental state; and (4) a risk of loss.

### A. Standard of Review

The test for factual insufficiency is indistinguishable from that of legal sufficiency. *See Brooks v. State*, 323 S.W.3d 893, 902 (Tex.Crim.App.2010). In assessing the sufficiency of the evidence, we determine whether, based on all of the record evidence viewed in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex.Crim.App.2003).

Under the *Jackson* standard, evidence is insufficient to support a conviction when, considering all the evidence admitted at trial in the light most favorable to the verdict, a fact finder could not have rationally found that each element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007). We have held:

> Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged.

*Gonzalez v. State*, 337 S.W.3d 473, 478–79 (Tex.App.-Houston [1st Dist.] 2011, pet. filed); *see Jackson*, 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. at 2786, 2789 & n. 11; *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim.App.2009); *Williams*, 235 S.W.3d at 750. In applying this standard, we must defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Williams*, 235 S.W.3d at 750. We presume that the trier of fact resolved any

---

**2.** Appellant raises no complaints on appeal regarding the disposition of these counts.

conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. We may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the fact finder. *Williams*, 235 S.W.3d at 750. If we find the evidence insufficient, we must reverse the judgment and enter an order of acquittal. *Gonzalez*, 337 S.W.3d 473, 476–77; *see Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982).

### B. Misapplication of Fiduciary Property

▪ Under the Texas Penal Code, a person commits the offense of misapplication of fiduciary property

> if he [1] intentionally, knowingly, or recklessly [2] misapplies [3] property he holds as a fiduciary or property of a financial institution [4] in a manner that involves substantial risk of loss [5] to the owner of the property or to a person for whose benefit the property is held.

TEX. PENAL CODE ANN. § 32.45(b) (Vernon Supp.2010); *Bynum v. State*, 767 S.W.2d 769, 778 (Tex.Crim.App.1989).

▪ The Penal Code also supplies the following definitions:

(1) "Fiduciary" includes:

(A) a trustee, guardian, administrator, executor, conservator, and receiver;

(B) an attorney in fact or agent under a durable power of attorney as provided by Chapter XII, Texas Probate Code;

(C) any other person acting in a fiduciary capacity, but not a commercial bailee ...; and

(D) an officer, manager, employee, or agent carrying on fiduciary functions on behalf of a fiduciary.

(2) "Misapply" means deal with property contrary to:

(A) an agreement under which the fiduciary holds the property; or

(B) a law prescribing the custody or disposition of the property.

TEX. PENAL CODE ANN. § 32.45(a)(1), (2). "Thus, misapplication can be an omission or failure to act where a duty to act exists." *Coleman v. State*, 131 S.W.3d 303, 309–10 (Tex.App.-Corpus Christi 2004, pet. ref'd). It is undisputed that appellant's actions did not violate any statute; thus in order to demonstrate an actionable misapplication of property, the State was required to prove beyond a reasonable doubt (1) that Kenneth and appellant had an agreement regarding how the money from their Joint Account was to be spent and (2) that appellant's actions violated that agreement.

▪ The plain meaning of "agreement" has been held to be "the act of agreeing or coming to a mutual agreement; a harmonious understanding; or an arrangement (as between two or more parties) as to a course of action." *Bynum v. State*, 711 S.W.2d 321, 323 (Tex.App.-Amarillo 1986), *aff'd*, 767 S.W.2d 769 (Tex. Crim.App.1989); *see Gonzalez v. State*, 954 S.W.2d 98, 104 (Tex.App.-San Antonio 1997, no pet.). Nothing in the statute requires the agreement to be in writing. *Gonzalez*, 954 S.W.2d at 104; *Kline v. State*, 737 S.W.2d 895, 899 (Tex.App.-Houston [1st Dist.] 1987, pet. ref'd). If an agreement requires a person to hold funds in trust and to pay them to another, failure to pay the funds to the intended beneficiary "is a breach of the agreement and when added to the other elements, constitutes an offense." *Little v. State*, 699 S.W.2d 316, 318 (Tex.App.-San Antonio 1985, no pet.). The actual disposition of the money is immaterial, and the State is not required to prove how the fiduciary applied the funds

"if the State has proved that the fiduciary failed to apply the funds according to the terms of the agreement." *Id.* It is, however, necessary to prove that the money was not used in compliance with the agreement. *Johnson v. State*, 783 S.W.2d 19, 22 (Tex.App.-Fort Worth 1989, pet. ref'd).

▓▓▓▓▓ Property may be deemed misapplied by a fiduciary contrary to a duty created by either an agreement or law that criminalizes the conduct of a fiduciary "only if it is handled in a manner giving rise to a substantial risk of loss and in contravention of an established duty to do otherwise." *Bynum*, 767 S.W.2d at 775. The proscribed conduct remains the same under both a private agreement and a state law at issue; "the scope of the duty owed by the fiduciary is constant and any departure must be proven." *Id.* Moreover, if the State relies on a breach of an agreement, the evidence must show that the defendant was a fiduciary with knowledge of the agreement so as to be guilty of misapplication of fiduciary property in an amount exceeding the statutory limit at the time the transactions were made. *Amaya v. State*, 733 S.W.2d 168, 171, 173 (Tex.Crim.App.1986). It is a fundamental proposition that all criminal laws must give notice to the people of what activity is made criminal "so that individuals have fair warning of what is forbidden." *State v. River Forest Dev. Co.*, 315 S.W.3d 128, 131 (Tex.App.-Houston [1st Dist.] 2010, no pet.) (citing *Bynum*, 767 S.W.2d at 773).

The only evidence of a written agreement that the State presented at trial to support its contention that appellant owed an established duty to Kenneth under an agreement or statute and handled the money in contravention of that agreement was the fact that appellant was a joint owner of the Joint Account with Kenneth, that Kenneth's checks were the only funds deposited into the account, and that appellant paid several of Kenneth's bills from Silverado while spending other money on her own bills. The State presented no evidence showing how Kenneth intended the money deposited into the account to be spent or what his agreement with appellant was with respect to that money. Rather, appellant was a co-owner of the Joint Account, and Detective Stepp testified that appellant held the same rights and privileges to the money in the account as Kenneth. This evidence is insufficient by itself to support a conclusion that appellant had agreed to handle the money from the Joint Account solely for Kenneth's benefit or that she otherwise handled the money in contravention of that agreement. *See Gonzalez*, 954 S.W.2d at 103–04; *Bynum*, 767 S.W.2d at 775; *see also Stauffer v. Henderson*, 801 S.W.2d 858, 861 (Tex. 1990) (holding that principal purpose of signature card or similar form provided by depository and signed by joint bank account owners when account is opened is to authorize depository to pay funds in account upon direction of any party to joint account).

The State argues that, after her mother's death, appellant took over the responsibility to pay Kenneth's bills. It relies on Wilson's and Lowery's testimony that they both understood that appellant was the responsible party for Kenneth's finances. However, neither of them testified that they had seen any documentation to that effect, nor had they received any direct communication from Kenneth or any member of his family establishing such a financial responsibility on appellant's part. The State also cites testimony that the funds deposited into the Joint Account were from the V.A. and Social Security, as well as from a pension fund, and that these monies barely covered Kenneth's monthly expenses at Silverado. The only other evidence in the record concerning appel-

lant's duties towards her grandfather is the testimony from appellant's brothers and father that appellant took over Kenneth's finances after her mother's death. The fact that appellant paid several of Kenneth's bills from Silverado is no evidence that she and Kenneth had an agreement that she was required to use the Joint Account funds for that purpose and no other. Furthermore, neither the general understanding of Silverado's employees nor of appellant's family that she "took over" Kenneth's finances after her mother died is evidence of a "harmonious understanding" or arrangement between Kenneth and appellant as to the specific use of the funds in the Joint Account. This testimony, therefore, does not provide evidence that appellant dealt with the monies in the Joint Account contrary to an agreement under which she held the property. *See* TEX. PENAL CODE ANN. § 32.45(a)(2)(A). We therefore agree with appellant that the record contains no evidence probative of the element of misapplication of property under an agreement. *See Jackson,* 443 U.S. at 318–19, 99 S.Ct. 2781; *see also* TEX. PENAL CODE ANN. § 32.45(b).

We hold that because the record contains no evidence probative of an element of the offense of misapplication of fiduciary property, the jury could not have rationally found appellant guilty of that offense. *See Jackson,* 443 U.S. at 318–19, 99 S.Ct. 2781; *Williams,* 235 S.W.3d at 750; *see also* TEX. PENAL CODE ANN. § 32.45(b). If a legal sufficiency challenge is sustained, then a judgment of acquittal must be rendered. *Roberson v. State,* 80 S.W.3d 730, 742 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

We sustain appellant's third issue. As we have sustained this issue, we need not reach other issues presented by appellant. *See* TEX.R.APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## Conclusion

Regarding appellate cause numbers 01–07–01011–CR, 01–07–01012–CR, 01–07–01013–CR, 01–07–01014–CR, and 01–07–01015–CR, we hold that we lack jurisdiction over these appeals, and, accordingly, we dismiss these causes.

Regarding appellate cause number 01–07–00997–CR, by which appellant challenged her conviction on Count III for misapplication of fiduciary funds, we hold that the evidence was insufficient to support appellant's conviction. We therefore reverse the judgment of the trial court and render a judgment of acquittal.