PD-1304-15

PD-1304-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/1/2015 4:00:59 PM
Accepted 10/2/2015 11:30:08 AM
ABEL ACOSTA
CLERK

No. _____

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS

**THE STATE OF TEXAS,**
PETITIONER,

V.

**JUSTIN OLLE,**
RESPONDENT.

PETITION IN CAUSE NO.13-CR-3607-B, FROM THE 117TH DISTRICT COURT OF NUECES COUNTY, TEXAS, AND CAUSE NO. 13-14-00207-CR, IN THE COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS.

# PETITION FOR DISCRETIONARY REVIEW

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@nuecesco.com

Attorney for Petitioner

FILED IN
COURT OF CRIMINAL APPEALS

October 2, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF JUDGE, PARTIES, AND COUNSEL

Trial Judge:
    Hon. Sandra Watts
    Judge, 117th District Court

State's Trial Attorneys:
    Ms. Courtney Hansen    State Bar No. 24068199
    Ms. Deborah Rudder    State Bar No. 00797355
    Assistant District Attorneys
    901 Leopard, Room 206, Corpus Christi, Texas 78401
    (361) 888-0410

State's Appellate Attorney:
    Mr. Douglas K. Norman    State Bar No. 15078900
    Assistant District Attorney
    901 Leopard, Room 206, Corpus Christi, Texas 78401
    (361) 888-0410

Appellee:
    Mr. Justin Olle

Appellee's Trial Attorneys:
    Mr. Ira Z. Miller    State Bar No. 24051051
    545 North Upper Broadway, Suite 114, Corpus Christi, Texas 78401
    (361) 882-7788
    Mr. Nathan Todd Burkett    State Bar No. 24058264
    P.O. Box 3189, Corpus Christi, Texas 78463
    (361) 883-8868

Appellee's Appellate Attorney:
    Mr. Scott Lemanski    State Bar No. 24041325
    400 Mann St., Suite 700, Corpus Christi, Texas 78401
    (361) 779-6036

# TABLE OF CONTENTS

**IDENTITY OF JUDGE, PARTIES, AND COUNSEL** ............................... i

**INDEX OF AUTHORITIES** ..................................................................... iii

**STATEMENT REGARDING ORAL ARGUMENT** ................................ 1

**STATEMENT OF THE CASE** .................................................................. 1

**STATEMENT OF PROCEDURAL HISTORY** ........................................ 2

**QUESTIONS PRESENTED FOR REVIEW** ............................................. 2

**ARGUMENT** ............................................................................................. 3

**1. The Thirteenth Court of Appeals erred in analyzing the legal sufficiency of the evidence based on the stated "findings" of the trial court, in the absence of any authority for the trial court to render findings binding on the reviewing Court.** ....................................................... 3

**2. The Thirteenth Court of Appeals erred in holding that the evidence was legally insufficient to prove that Olle was acting in a fiduciary capacity with the victim brides based on evidence of a special relationship whereby the brides entrusted Olle with money specifically intended for certain vendors and not merely as payment to Olle.** ............ 4

     **I. Misapplication of Fiduciary Property.** ........................................... 4
     **II. Statement of Facts.** ....................................................................... 5
     **III. Fiduciary Capacity.** ...................................................................... 7
     **IV. Application.** ................................................................................... 9

**PRAYER FOR RELIEF** ............................................................................. 11

**RULE 9.4 (i) CERTIFICATION** ................................................................ 12

**CERTIFICATE OF SERVICE** ................................................................. 12

**APPENDIX.  Thirteenth Court of Appeals Opinion.**

# INDEX OF AUTHORITIES

## CASE LAW

*Berry v. State*, 424 S.W.3d 579 (Tex. Crim. App. 2014). ...........................7-9

*Gonzalez v. State,* 954 S.W.2d 98 (Tex. App.-San Antonio 1997, no pet.). .. 8

*Merryman v. State*, 391 S.W.3d 261 (Tex. App.—San Antonio 2012, pet. ref'd). ....................................................................................... 8, 9

*Robinson v. State*, --- S.W.3d ---, PD-0421-14, 2015 WL 4068109 (Tex. Crim. App. July 1, 2015). ......................................................................... 3

*Skillern v. State,* 355 S.W.3d 262 (Tex. App.-Houston [1st Dist.] 2011, pet. ref'd). ..................................................................................... 9

## STATUTES, RULES AND OTHER AUTHORITIES

Tex. Penal Code § 32.45. ............................................................. 4

Black's Law Dictionary (9th ed. 2009). ........................................ 7

No. _____

| THE STATE OF TEXAS, | IN THE |
|---|---|
| Petitioner, | |
| | |
| v. | COURT OF CRIMINAL APPEALS |
| | |
| JUSTIN OLLE, | |
| Respondent. | OF TEXAS |

## STATE'S PETITION FOR DISCRETIONARY REVIEW

## TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through the District Attorney for the 105th Judicial District of Texas, and respectfully urges this Court to grant discretionary review of the above named cause for the reasons that follow:

## STATEMENT REGARDING ORAL ARGUMENT

The State believes that oral argument would be helpful to the determination of the present appeal because of the uncertainty that still looms concerning the distinction between an arms-length business relationship that implicates only civil penalties for a breach, and a special relationship of trust and confidence sufficient to create a fiduciary relationship and impose criminal liability.

## STATEMENT OF THE CASE

Justin Olle was indicted on one count of Misapplication of Fiduciary Property, one count of Theft, and five counts of Forgery, all based on

1

numerous contracts for wedding planning services with the victim brides. (CR p. 20) After a bench trial on his pleas of not guilty, the trial court found Olle guilty and sentenced him to ten years in prison for Misapplication of Fiduciary Property, fifteen years in prison for Theft, and two years in state jail for Forgery, with an order for $100,000 in restitution. (CR p. 484) Olle filed a timely notice of appeal.

## STATEMENT OF PROCEDURAL HISTORY

On September 17, 2015, a panel of the Thirteenth Court of Appeals issued an unpublished memorandum opinion reversing Olle's conviction for Count 1, Misapplication of Fiduciary Property, rendering a judgment of acquittal thereon, deleting the $100,000 in restitution, and otherwise affirming the judgment and sentences against Olle for theft and forgery. The State did not file a motion for rehearing.

## QUESTIONS PRESENTED FOR REVIEW

**1. The Thirteenth Court of Appeals erred in analyzing the legal sufficiency of the evidence based on the stated "findings" of the trial court, in the absence of any authority for the trial court to render findings binding on the reviewing Court.**

**2. The Thirteenth Court of Appeals erred in holding that the evidence was legally insufficient to prove that Olle was acting in a fiduciary capacity with the victim brides based on evidence of a special relationship whereby the brides entrusted Olle with money specifically intended for certain vendors and not merely as payment to Olle.**

**ARGUMENT**

**1. The Thirteenth Court of Appeals erred in analyzing the legal sufficiency of the evidence based on the stated "findings" of the trial court, in the absence of any authority for the trial court to render findings binding on the reviewing Court.**

This Court has recently stated, "the appellate standard for reviewing the sufficiency of the evidence is based on a hypothetical rational fact finder, rather than on the actual fact finder's particular thought process." *Robinson v. State*, --- S.W.3d ---, PD-0421-14, 2015 WL 4068109 *4 (Tex. Crim. App. July 1, 2015). To that end, the Court held that "an appellate court should disregard a trial court's findings of fact and conclusions of law in their entirety, even when they support the trial court's judgment." *Id.* at *5.

However, in its opinion in this case, the Thirteenth Court of Appeals directly quoted the trial court's findings, which relied upon only a few excerpted statements of assurance made by Olle to the victims, rather than on the totality of the relationship between them (See Memorandum Opinion pp. 8-9), and, based on those findings and excerpts, the Thirteenth Court of Appeals concluded that it was "unpersuaded that appellant's statements created a justifiable expectation in appellant's clients that he would place their interests before his own." (Memorandum Opinion p. 9) The problem with the Court of Appeals' reasoning and analysis is that it ignored this Court's "hypothetical rational fact finder" standard of review, gave

deference to the trial court's improper findings, and failed to discuss or analyze the totality of the relationship between the parties that gave rise to a fiduciary relationship.

**2. The Thirteenth Court of Appeals erred in holding that the evidence was legally insufficient to prove that Olle was acting in a fiduciary capacity with the victim brides based on evidence of a special relationship whereby the brides entrusted Olle with money specifically intended for certain vendors and not merely as payment to Olle.**

### I. Misapplication of Fiduciary Property.

A person commits the offense of Misapplication of Fiduciary Property if he "intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary ... in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held." Tex. Penal Code § 32.45(b). The statute further provides that a "fiduciary" includes, among other things, any person who is "acting in a fiduciary capacity." Tex. Penal Code § 32.45(a)(1)(C).

In the present case, Olle was charged with a single count of Misapplication of Fiduciary Property, aggregating together money that he received from numerous victim brides and allegedly misapplied for his own use or that of another person. (CR pp. 21-39) On appeal, the sole element of misapplication that Olle challenged was his own status as a fiduciary under the agreements that he had with the victim brides.

4

## II. Statement of Facts.

The pertinent terms in each of the 38 contracts between Olle and the victim brides appear to be virtually identical. They are titled "Contract and Letter of Agreement," and provide that the brides agree to retain Olle as a "Professional Wedding Coordinator & Designer."[1] The contracts contain the following clauses describing the business relationship created between Olle and the brides as it related to budgets and obtaining the services of other vendors or service providers:

**Description of Services:**
As a consultant & designer my role includes:
…
-Assistance in budget determination and breakdown as needed
…
-Research of wedding professionals in each category that fit your event style & budget and to provide you vendor contracts including samples or designs if necessary which will also be included in your package if agreed
…
-Development of a detailed wedding timeline and floor plan for contracted vendors and bridal party
-Follow up with telephone calls to all contracted vendors 1-2 weeks before the wedding day
…
**Conditions:**
-I understand that my role will be that of the advisor, coordinator and designer. You will make the actual selections of the service providers unless included in coordinating package/quote and I will implement those selections with the included vendors with Justin Lee Designs.
-I do not accept any commissions from recommended vendors and

---

[1] Some of the contracts refer to Olle as a "Professional Wedding/Event Coordinator & Designer."

cannot guarantee any service provider's performance or product; however I will guarantee to follow up and do what is necessary to make sure vendors do adhere to their obligations and will aide in pursuing complaints and refunds if necessary. …
…
**Fees & Payment Schedule:**
For my services and the agreed upon budget you will by signing this contract pay me a total of _____ for all services rendered and discussed and agreed upon details. …

(RR vol. 17: SX # 2 – SX # 36, and SX # 71, SX # 131, and SX # 210)

At trial, testimony from the victim brides clarified the general nature of their relationship with Olle, as follows:

When the contracts were negotiated, Olle assisted the brides in coming up with a total budget for their weddings, which was reflected in the total contract price with Olle. (RR vol. 2, p. 98) However, Olle represented that it was best if he handled all of the contracts with the vendors and paid them himself. (RR vol. 2, pp. 81, 113, 122; RR vol. 3, p. 18)

Olle then provided the brides with a list of vendors from which to choose. (RR vol. 2, p. 175; RR vol. 3, p. 24) They discussed different vendors (RR vol. 3, p. 16), but the brides ultimately decided which vendors to choose. (RR vol. 3, pp. 107, 113)

The brides or their parents then gave money to Olle to pay for specific items or services (RR vol. 2, p. 181), and Olle represented that he would use the brides' money to pay the vendors. (RR vol. 2, pp. 123, 138; RR vol. 3,

6

p. 32) Olle also told the brides that he would keep their money separate from funds that he had for other weddings, and that it would be used specifically for their wedding. (RR vol. 2, p. 138; RR vol. 3, pp. 71-72, 75)

To account for the manner in which their money was being spent, Olle agreed with the brides to provide them with invoices and receipts from the vendors and a breakdown of the money that was being spent. (RR vol. 2, pp. 98, 128-29; RR vol. 3, p. 150)

### III. Fiduciary Capacity.

This Court has recently held that "fiduciary capacity," for purposes of the offense of misapplication of fiduciary property, "encompasses only special relationships of confidence or trust in which one party is obligated to act primarily for the benefit of the other," *Berry v. State*, 424 S.W.3d 579, 580 (Tex. Crim. App. 2014), and that a person acts in a fiduciary capacity "if his relationship with another is based not only on trust, confidence, good faith, and utmost fair dealing, but also on a justifiable expectation that he will place the interests of the other party before his own." *Id.* at 585 (citing Black's Law Dictionary 702 (9th ed. 2009)).

This generally does not include a "one-time contract to sell goods and services between two parties acting for their own benefit." *Berry*, 424 S.W.3d at 585. In *Berry*, the defendant contracted to sell and install blinds

and shutters in simple two-party transactions with his customers, with no indication of any contact or relationship between the customers and third-party suppliers. 424 S.W.3d at 580.

However, in refusing to find a fiduciary relationship in *Berry*, the Court of Criminal Appeals found the following factors significant:

> Appellant had no special or confidential relationship with his customers beyond the usual contractual relationship that exists between any seller and a buyer of goods. No evidence shows that appellant was a confidant, specially trusted advisor, or that there was any special relationship that would have required him to act primarily in the interest of his customers rather than in his own pecuniary interest, nor is there any evidence to show that appellant was required to exercise a high standard of care in handling his customers' money. There is nothing in the record to suggest that appellant was specially "required to act for the benefit of" his customers or that he owed them a duty of "good faith, trust, confidence and candor."

*Id.* at 586. Similarly, the San Antonio Court of Appeals has stated that:

> a person acts in a fiduciary capacity within the context of section 32.45 "when the business which he transacts, or the money or property which he handles, is not his or for his own benefit, but for the benefit of another person as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part."

*Merryman v. State*, 391 S.W.3d 261, 269 (Tex. App.—San Antonio 2012, pet. ref'd) (quoting *Gonzalez v. State,* 954 S.W.2d 98, 103 (Tex. App.-San Antonio 1997, no pet.)). The Court in *Merryman* found the key factor to be whether there was an agreement that the property or funds were entrusted to the defendant for a particular purpose. 391 S.W.3d at 269-70 (a construction

8

project in that case); *see also Skillern v. State,* 355 S.W.3d 262, 268 (Tex. App.-Houston [1st Dist.] 2011, pet. ref'd) (to establish misapplication of fiduciary property, state must prove an agreement between defendant and complainant regarding how the funds are to be spent, and that defendant's actions violated that agreement). Moreover, this understanding that funds or property are specially entrusted to the defendant need not be spelled out in the terms of the contract itself, but may be manifested in "an overall agreement or understanding between the parties." *Merryman*, 391 S.W.3d at 270.

Likewise, all of the cases cited by *Berry* as examples of a fiduciary relationship, both in the text and in Footnote 7, involve the holding and misapplication of funds entrusted to the fiduciary for a specific purpose but directed elsewhere. 424 S.W.3d at 584-85 & n.7. This aspect of the relationship – that the defendant is holding something not merely as his payment under the contract, but for some specific purpose on behalf of the victim – raises the relationship beyond that of merely buyer and seller and justifies an added fiduciary obligation.

### IV. Application.

In the present case, the Thirteenth Court of Appeals concluded that "we can discern no significant distinctions between the sale of construction

services in *Merryman*, the sale and installation of shutters and blinds in *Berry*, and the sale of wedding design and planning services in the present case." (Memorandum Opinion p. 9)

The Court thereby failed to make the distinction between an arms-length transaction between the buyer and seller in which the arrangements are purely between those two entities, and complex multi-party arrangements like the present ones in which there is interplay between the buyer and third-party vendors, with the seller holding and dispersing funds to those vendors at the buyer's direction and with an accounting to the buyer for the funds dispersed.

Although the terms of the present written contract may be unclear, testimony at trial established that Olle was not simply being hired to provide wedding design and planning services for a set amount, but was being entrusted by the victim brides with a budgeted amount of money to pay all of the necessary vendors selected by the brides, and that payments were made to Olle for specific vendors. In other words, Olle was acting at least in part as a conduit for funds intended for the vendors of the various goods and services. This is exactly the sort of "special relationship" that was lacking in *Berry* and that obligated Olle in the present case to act primarily in the interest of his customers rather than in his own pecuniary interest with

regard to the money being given to him for the vendors. As in *Merryman*, the funds in the present case were entrusted to Olle for a specific purpose, *i.e.*, to pay the vendors, and not merely as compensation to Olle for his own services.

Accordingly, there was legally sufficient evidence to show that Olle was acting in a fiduciary capacity when he misapplied the funds in question, and the Thirteenth Court of Appeals erred in concluding otherwise. To the extent that this Court's opinion in *Berry* leaves uncertain whether arrangements like this should be considered to create a fiduciary relationship, this case presents an important question of state law that the Thirteenth Court of Appeals has decided in conflict with *Merryman* and that should be settled by this Court.

## PRAYER FOR RELIEF

For the foregoing reasons, the State requests that the Court: grant this petition for discretionary review; set this case for submission with oral argument; and, after submission, reverse that portion of the judgment of the Court of Appeals that acquitted Olle of Count 1, Misapplication of Fiduciary Property, and deleted the $100,000 in restitution, and either reinstate the judgment and sentence of the trial court on that count and for restitution, or remand for further proceedings thereon in the Thirteenth Court of Appeals.

Respectfully submitted,

/s/ *Douglas K. Norman*

_____
Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@nuecesco.com

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this petition, excluding those matters listed in Rule 9.4(i)(1), is 2,186.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to Tex. R. App. P. 6.3 (a), copies of this petition for discretionary review were e-mailed on October 1, 2015, to Respondent's attorney, Mr. Scott Lemanski, at lemanskilaw@gmail.com, and to the State Prosecuting Attorney.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman

# APPENDIX.

# Thirteenth Court of Appeals Opinion.



NUMBER 13-14-00207-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JUSTIN OLLE,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 117th District Court of Nueces County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Garza, Benavides and Longoria
### Memorandum Opinion by Justice Garza

Following a bench trial, the trial court found appellant Justin Olle guilty of one count of misapplication of fiduciary property, a third-degree felony offense (Count 1), *see* TEX. PENAL CODE ANN. § 32.45(b), (c)(5) (West, Westlaw through 2015 R.S.); one count of theft, a second-degree felony offense (Count 2), *see id.* §31.03(a), (e)(6)(A) (West, Westlaw through 2015 R.S.); and five counts of forgery, a state-jail felony offense (Counts

3–7), *see id.* § 32.21(b), (d) (West, Westlaw through 2015 R.S.). The trial court assessed punishment as follows: (1) ten years' imprisonment on Count 1, but suspended the sentence and placed appellant on community supervision for ten years; (2) fifteen years' imprisonment on Count 2; (3) two years' confinement in state jail on each of Counts 3–7; and (4) restitution in the amount of $100,000. All of the sentences were ordered to run concurrently. By three issues, appellant contends the evidence is insufficient to support his convictions. We reverse appellant's conviction in Count 1, misapplication of fiduciary property, and otherwise affirm.[1]

## I. BACKGROUND

The following facts are taken from the testimony and evidence presented at trial. The State presented the testimony of 64 witnesses and 284 exhibits over the ten-day guilt/innocence phase of the trial. The appellant presented no witnesses.

The events at issue occurred between August 2012 and May 2013. During that time, appellant was in the business of coordinating and designing weddings under the name of "Justin Lee Designs" in Corpus Christi, Texas. The State introduced into evidence thirty-eight contracts executed by prospective brides and appellant. The contracts, virtually identical except for the parties' names and fee amounts, are entitled "Contract and Letter of Agreement" and describe in very general terms the wedding-planning services to be provided. The brides who testified told remarkably similar stories: that they had contracted with appellant for an agreed-upon sum for his services; they paid agreed-upon installment amounts or the full amount as stated in the contract; in many cases, services were not provided as discussed or promised, such as failure to send

---

[1] Because the trial court clearly imposed the $100,000 in restitution as punishment for Count 1, we delete that part of the judgment requiring the payment of $100,000 in restitution.

"save the date" announcements or invitations in a timely manner, failure to provide sufficient chairs, tables, centerpieces, flowers, food, music, photographs, and other services as promised; failure to provide a breakdown of costs and payments to vendors as promised; and failure to provide refunds when requested and promised. At least one reception was hastily arranged in a hallway because of a failure to secure the chosen venue on the correct date. The brides testified that appellant made excuses for missing meetings and failing to provide the services as promised. In a few cases, appellant provided refunds of the amounts paid; in many cases, however, refunds were requested but were never received. In some cases, appellant provided brides with invoices/receipts purportedly showing that services to a vendor had been paid, when, in fact, such payments to the vendor had not been made.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record of historical facts supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State,* 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

A person commits the offense of misapplication of fiduciary property if he "intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary . . . in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held." *See* TEX. PENAL CODE ANN. § 32.45(b); *Berry v. State*, 424 S.W.3d 578, 582 (Tex. Crim. App. 2014). A "fiduciary" is defined, among other things, as any person who is "acting in a fiduciary capacity." TEX. PENAL CODE ANN. § 32.45(a)(1)(C). "[O]ne acts in a 'fiduciary capacity' for purposes of the misapplication statute if his relationship with another is based not only on trust, confidence, good faith, and utmost fair dealing, but also on a justifiable expectation that he will place the interests of the other party before his own." *Berry*, 424 S.W.3d at 585.

Here, in forty-one nearly identical paragraphs in the indictment, the State alleged that appellant: (1) intentionally, knowingly, or recklessly, (2) misapplied funds that he held as a fiduciary, (3) contrary to an agreement under which he held the funds, (4) and in a manner that involved substantial risk of loss of the owners' funds, (5) by using the funds for his own personal benefit or the benefit of another, or appropriating the funds for another event or business expenses unrelated to the owner's event.

4

A person commits theft "if he unlawfully appropriates property with intent to deprive the owner" of it. TEX. PENAL CODE ANN. § 31.03(a); *see Taylor v. State*, 450 S.W.3d 528, 535 (Tex. Crim. App. 2014).

> An intent to deprive an owner of his property means an intent "to withhold the property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." Appropriation is unlawful if it is without the owner's effective consent. Consent is not effective "if induced by deception."

*Taylor*, 450 S.W.3d at 535 (citations omitted). The statute defines "deception" to include, among other things:

> (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;
>
> (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;
>
> . . . .
>
> (E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

TEX. PENAL CODE ANN. § 31.01(1)(A), (B), (E) (West, Westlaw through 2015 R.S.). As stated, it is not enough that the evidence shows that the accused has failed to perform the promise at issue. *Id.* § 31.01(1)(E); *Taylor*, 450 S.W.3d at 538. To support a conviction for theft, there must be evidence to show that, at the time of the customer's voluntary payment, the accused intended, or knew, that he would not perform. *Taylor*, 450 S.W.3d at 536. An accused may be guilty of theft:

5

if, at some point after the formation of the contract, he formulates the requisite intent to deprive and appropriates *additional* property by deception; that is, he induces his customer to make further payment on the contract while no longer intending to perform, or at least knowing that he will not.

*Id.* at 537.

Here, the State charged appellant with forty-one instances of stealing money from brides and thirteen instances of stealing money from vendors. In fifty-four nearly identical paragraphs, the State alleged that appellant: (1) unlawfully appropriated, by acquiring or exercising control, (2) money (3) from owners (4) without the owners' consent and (5) with intent to deprive the owners of their money.

A person commits forgery if he "forges a writing with intent to defraud or harm another." *Id.* § 32.21(b). Forgery is a state-jail felony offense "if the writing is or purports to be a . . . commercial instrument." *Id.* § 32.21(d). A store receipt is a "commercial instrument" for purposes of the forgery statute. *Shipp v. State*, 331 S.W.3d 433, 440 (Tex. Crim. App. 2011) (plurality op.). In counts three through seven of the indictment, the State alleged that appellant: (1) with intent to defraud or harm another (2) altered, made, completed or executed a writing (3) which purported to be the act of [a named vendor] (4) who did not authorize the act (5) and the writing, a commercial instrument, (6) was an invoice or payment receipt for [a specific monetary amount from the vendor].

### III. DISCUSSION

#### A. Misapplication of Fiduciary Property

By his first issue, appellant challenges the sufficiency of the evidence to support his conviction for misapplication of fiduciary property. Specifically, the only element challenged by appellant is whether he was acting in a fiduciary capacity. *See* TEX. PENAL CODE ANN. § 32.45(b). Appellant argues that the issue of whether he was acting in a

6

fiduciary capacity is governed by the court of criminal appeals' holding in *Berry*. 424 S.W.3d at 585–86.

In *Berry*, the defendant took orders and accepted payments for the installation of blinds and shutters but failed to deliver products or services. *Id.* at 580–81. The defendant was convicted of aggregated misapplication of fiduciary property and aggregated theft of currency. *Id.* at 580. The San Antonio Court of Appeals affirmed the defendant's conviction, finding that he was "clearly acting as a fiduciary" when he accepted payments for the purpose of ordering his customers' blinds with the understanding that the payments were to be used for the customers' benefit. *Id.* at 581.

The court of criminal appeals "disagree[d] that appellant's ordinary business relationship with his customers was, by virtue of the existence of an agreement to provide them with window treatments, a fiduciary relationship." *Id.* at 585–86. The court found that:

> Appellant had no special or confidential relationship with his customers beyond the usual contractual relationship that exists between any seller and a buyer of goods. No evidence shows that appellant was a confidant, specially trusted advisor, or that there was any special relationship that would have required him to act primarily in the interest of his customers rather than in his own pecuniary interest, nor is there any evidence to show that appellant was required to exercise a high standard of care in handling his customers' money. There is nothing in the record to suggest that appellant was specially "required to act for the benefit of" his customers or that he owed them a duty of "good faith, trust, confidence and candor." On the contrary, this is a situation involving a one-time contract for goods and services made for the benefit of both parties and is, therefore, not the type of relationship that gives rise to a fiduciary duty.

*Id.* at 586.

The State argues that appellant was entrusted by the brides to ensure that payments were made to specific vendors. According to the State, "[t]his is exactly the sort of 'special relationship' that was lacking in *Berry* and that obligated [appellant] to act

7

primarily in the interest of his customers rather than in his own pecuniary interest with regard to the money being given to him for the vendors." The State argues that the present case is similar to *Merryman v. State*, in which the San Antonio Court of Appeals found there was sufficient evidence to support a contractor's conviction for misapplication of fiduciary property when he accepted customers' payments but failed to complete the agreed-to projects. *See Merryman v. State*, 391 S.W.3d 261, 270 (Tex. App.—San Antonio 2012, pet. ref'd). The San Antonio court found that there was evidence that the appellant had an agreement with his customers that their payments to him had been entrusted for a particular purpose. *Id.* at 270.

In the present case, the trial court explained her reasoning in finding appellant guilty of misapplication of fiduciary property. The court acknowledged the holding in *Berry*, but stated her conclusion that *Berry* "did not overturn the *Merryman* decision, instead, clarified and narrowed the definition of fiduciary . . . ."[2] The trial court noted that the fact that the brides subjectively trusted appellant was insufficient to find a fiduciary relationship. *See Berry*, 424 S.W.3d at 586. The trial court found, however, that appellant's "conduct" and "assurances" were sufficient to give rise to a fiduciary relationship. The trial court quoted the following statements made by appellant:

> "I'm excited to show you how I can give you the wedding of your dreams and a day you will treasure for the rest of your lives."

---

[2] The trial court also noted, correctly, that in *Berry*, the court of criminal appeals did not mention or attempt to distinguish *Merryman v. State*. *See Berry v. State*, 424 S.W.3d 579, 582–86 (Tex. Crim. App. 2014). We note, however, that the San Antonio Court of Appeals, in both *Merryman* and *Berry*, relied on the definition of fiduciary capacity stated in its earlier decision in *Gonzalez v. State*, 954 S.W.2d 98, 103 (Tex. App.—San Antonio 1997, no pet.). *See Merryman v. State*, 391 S.W.3d 261, 269 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Gonzalez*, 964 S.W.2d at 103); *Berry v. State*, No. 04-10-00924-CR, 2012 WL 1648213, at *2 (Tex. App.—San Antonio May 9, 2012) (mem. op.), *rev'd*, 424 S.W.3d at 586 (citing *Gonzalez*, 964 S.W.2d at 103). In reversing the court of appeals in *Berry*, the court of criminal appeals stated that the San Antonio court "cited the correct definition of 'fiduciary' in assessing the sufficiency of the evidence to sustain appellant's conviction, but erred in its application of that definition to the facts of this case." *Berry*, 424 S.W.3d at 586. Given that the court of criminal appeals declined to distinguish *Merryman*, we conclude that the holding in *Berry* at the very least undermined the analysis in *Merryman*.

8

"We are your one-shop stop and can help you get everything you could possibly need for the big day."

"I have many samples of weddings I have done.  Each design I create is custom to each client.  I never recreate the same design twice.  We will help you obtain everything necessary at wholesale and pass those savings on to you."

The trial court found that appellant's statements "assured these brides and they developed more and more confidence in your ability to do something for them."  The court stated that she did not find a fiduciary relationship with the brides that contracted with appellant shortly before he went out of business because "[a]t the end, I think you were saying anything you needed to say in order to get money in with absolutely no intent to deliver."

We are unpersuaded that appellant's statements created a justifiable expectation in appellant's clients that he would place their interests before his own.  *See id.* at 585.  Moreover, we can discern no significant distinctions between the sale of construction services in *Merryman*, the sale and installation of shutters and blinds in *Berry*, and the sale of wedding design and planning services in the present case.  Nonetheless, we conclude that, as in *Berry*, appellant's agreements with the brides involved "a one-time contract for goods and services made for the benefit of both parties and [were], therefore, not the type of relationship that gives rise to a fiduciary duty."  *See id.* at 586.  Although there was ample testimony that the brides trusted appellant to pay the vendors selected and deliver the promised services, "the mere fact that appellant's customers subjectively trusted him is insufficient to give rise to a fiduciary relationship."  *See id.*

Considering all the evidence in the light most favorable to the verdict, we hold that no rational trier of fact could have found that appellant was acting as a fiduciary with

respect to his customers. *See Hacker*, 389 S.W.3d at 865. Accordingly, we hold that the evidence is insufficient to sustain his conviction for misapplication of fiduciary property. *See* TEX. PENAL CODE ANN. § 32.45(b). We sustain appellant's first issue.

## B. Theft

By his second issue, appellant contends that the evidence is insufficient to support his conviction for theft. Appellant does not identify the specific elements of theft that he is challenging. Instead, he argues primarily that the facts and circumstances in the present case are distinguishable from those in *Merryman. See Merryman*, 391 S.W.3d at 264–68. Appellant argues that, unlike in *Merryman*, he did not make threats or walk out on any job; there is no evidence that he used his customers' payments for personal expenses; and unlike the defendant in *Merryman*, he completed the work promised to some of his clients: out of forty complainants, appellant completed nine weddings; in thirty-one cases, no wedding occurred, but appellant argues that some services were provided.

Here, the indictment alleged that appellant unlawfully acquired and exercised control over money without the owner's consent and with the intent to deprive the owner of the money. It is undisputed that by accepting payments for promised services, appellant exercised control over his clients' money.

The State interprets appellant's arguments as challenging the "intent to deprive" and "deception" elements of theft. Absent any guidance from the appellant, we will do likewise.[3]

---

[3] We note that appellant did not file a reply brief.

10

The State argues that *Taylor v. State* provides guidance in this case. *See Taylor*, 450 S.W.3d at 538–39. In *Taylor*, the court of criminal appeals found that the defendant's pattern of inability to satisfy other recent contractual obligations supported a rational inference that he knew—at least by the time he accepted a second installment payment from a customer—that he would be unable to fulfill his contractual obligations. *See id.* Here, the evidence showed that, in many cases, appellant represented that certain vendors had been paid when, in fact, they had not been paid. Appellant accepted installment payments from clients and represented that certain services had been ordered, arranged, and provided for when such arrangements had not, in fact, been made. In some instances, appellant promised his clients a refund, but failed to provide a refund.[4] Several witnesses testified that they signed contracts with appellant and made payments to him in April and May of 2013 shortly before appellant closed his business. This evidence establishes that at the time appellant accepted those payments, he knew that he would be unable to fulfill his contractual obligations. *See id.*

When reviewing the evidence, we do not substitute our judgment for that of a factfinder, even if we may have reached a different result. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Having reviewed the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that when appellant accepted voluntary payments from his clients, especially in the spring of 2013, he intended, or knew, that he would not perform. *See Jackson*, 443 U.S. at 319; *Taylor*, 450 S.W.3d at 538–39. We overrule appellant's second issue.

---

[4] When appellant closed his business and left town, he left a note on the door promising refunds to his clients.

11

## C. Forgery

By his third issue, appellant challenges the sufficiency of the evidence to support his conviction for forgery (Count 6), which alleged that appellant prepared a receipt that falsely represented that it was issued by Poets Catering and that catering services in the amount of $2,667.01 had been "paid in full."[5]  The only argument asserted by appellant is that the trial court erred in relying on the court of criminal appeals' decision in *Shipp v. State* because his intent in producing a forged receipt was distinguishable from the defendant's intent in *Shipp.  See Shipp v. State*, 331 S.W.3d 433, 435 (Tex. Crim. App. 2011) (plurality op.).

In *Shipp*, the defendant attempted to leave a Wal–Mart store with a computer and computer desk.  *See id.*  A store employee stopped the defendant and inspected his store receipt, which was determined to be a forgery.  *See id.*  The defendant was charged with forgery, which is a state jail felony offense if the forged "writing" is a "commercial instrument."  *See* TEX. PENAL CODE ANN. § 32.21(d).  A jury found that the store receipt was a "commercial instrument" and convicted him.  *See Shipp*, 331 S.W.3d at 434.  The Sixth Court of Appeals disagreed, finding that the store receipt was not a "commercial instrument" under the statute.  *See id.*  The State appealed.  *See id.*  In a plurality opinion, the court of criminal appeals held that the store receipt was a commercial instrument.  *Id.* at 440.[6]

---

[5] Appellant was convicted of five counts of forgery, but the only argument made in his brief relates to State's Exhibit 115, which corresponds to the allegations in Count 6.

[6] Judge Price, joined by three other judges, found the statutory language ambiguous, and therefore considered legislative history in reaching his conclusion.  *See Shipp v State*, 331 S.W.3d 433, 440 (Tex. Crim. App. 2011) (plurality op.).  Judge Meyers agreed with the plurality opinion that the receipt was a "commercial instrument," but relied only on the plain meaning of the statutory language.  *See id.* at 441–42 (Meyers, J., concurring).

12

We find appellant's sole argument—that his "sole intent [was] to delay the time of his performance by allowing the customers to believe that more rapid progress was being made then [sic] was actually the case"—to be irrelevant to the issue of whether the falsified receipt for catering services (State's Exhibit 115) was a "commercial instrument." We hold that the receipt for catering services is a "commercial instrument" under the analysis in *Shipp*, and the trial court did not err in so finding. Having reviewed the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that State's Exhibit 115 was a "commercial instrument." *See Jackson*, 443 U.S. at 319; *Shipp*, 331 S.W.3d at 440; TEX. PENAL CODE ANN. § 32.21(d). We overrule appellant's third issue.

## IV. CONCLUSION

We reverse appellant's conviction for Count 1, misapplication of fiduciary property, and render a judgment of acquittal on that count. We delete that part of the judgment requiring the payment of $100,000 in restitution. We otherwise affirm the trial court's judgment.

Dori C. Garza
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
17th day of September, 2015.

13