**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00480-CR**
_____

**MARIO TORRES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1**
**Montgomery County, Texas**
**Trial Cause No. 16-318638**

**MEMORANDUM OPINION**

Mario Torres appeals his conviction for driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a) (West Supp. 2018). In three issues, he argues: (1) his trial counsel rendered ineffective assistance of counsel; (2) the trial court erred by denying Torres's motion for new trial regarding his claim of ineffective assistance of counsel; and (3) the evidence is legally insufficient to support the jury's guilty verdict.

1

## The Trial

Deputy Steven Terrell testified that he stopped Torres for having two defective brake lamps and for travelling fifteen miles per hour over the posted speed limit. Deputy Terrell observed possible signs of intoxication in that Torres had bloodshot eyes and emitted a strong aroma of alcoholic beverage. Upon administering field sobriety tests to Torres, Deputy Terrell observed 6 of 6 clues on the Horizontal Gaze Nystagmus (HGN) test. On the walk-and-turn test, Torres exhibited one or two of the eight clues of intoxication when he started too soon and raised his arm over six inches to count his steps. On the one-leg-stand test, Torres exhibited one clue of intoxication by putting his foot down. The deputy admitted that two clues would indicate possible intoxication. Torres admitted he had two cocktails and a beer and rated his own level of intoxication between four and one-half to five on a scale of intoxication of zero to ten. In a search incident to arrest, Deputy Terrell found receipts for additional alcoholic beverages Torres had purchased on that evening.

The jury received testimony that when he administered the HGN test, Deputy Terrell deviated from the guidelines of the NHTSA manual by extending his focus object beyond Torres's shoulders while checking for smooth pursuit. Deputy Terrell admitted that error can result from performing the test improperly. He also admitted

the receipts found on Torres did not indicate who consumed the drinks Torres purchased.

Deputy Terrell arrested Torres for driving while intoxicated. Deputy Terrell obtained a warrant for a blood specimen after Torres refused to provide one voluntarily. Charlotte Holiday, the phlebotomist who drew the blood specimen from Torres, admitted that the space on the form for the name of the person providing the specimen was left blank. Eric Ho, a forensic scientist, testified that he analyzed the blood specimen and determined Torres's blood alcohol concentration (BAC) exceeded the legal limit of .08. Ho described the factors for retrograde extrapolation and estimated that Torres had a blood alcohol concentration of .10 at the time of the traffic stop.

**The Motion for New Trial Hearing**

The trial court held an evidentiary hearing on Torres's motion for new trial. Torres argued the evidence was insufficient to support the conviction because the State presented unreliable BAC extrapolation opinion testimony in light of inconsistencies between Deputy Terrell's report and his trial testimony and further argued that trial counsel was ineffective because he failed to fully investigate the State's evidence, failed to call Torres's retained expert as a witness in the trial, and failed to urge a previously filed motion to suppress.

3

The two lawyers who represented Torres at his trial testified in the hearing on the motion for new trial. Counsel of record, Ruben Franco, testified that Torres worked in sales in the oil and gas industry and was not indigent. According to Franco, when Torres initially retained Franco, he and Torres discussed the need to retain an expert to contradict the State's expert. They eventually retained two experts, Dr. Gary Wimbish and Dr. Lance Platt, to provide reports but not to testify. Franco used the information obtained from the experts to impeach the State's witnesses.

Franco attributed the failure to obtain the experts' trial testimony to Torres's failure to provide the necessary funds. According to Franco, Dr. Wimbish charged a $1,200 retainer for a report on the State's evidence and $3,000 plus travel expenses to testify in the trial. Torres told Franco that $3,000 was just too much for one DWI. Torres decided to pay Dr. Wimbish's the $1,200 retainer for a report on the State's evidence the weekend before the trial. Franco provided Dr. Wimbish with the State's file, the video of the stop, the offense report, and the blood collection documents and laboratory reports. Franco did not seek documents directly from the Department of Public Safety (DPS) because Torres had decided he would not retain Dr. Wimbish to testify in the trial, and it would be pointless to obtain the documents if the expert was not going to testify at trial. Franco added that Dr. Wimbish was unavailable for

the trial date and he did not seek a continuance on those grounds because Torres decided to retain Dr. Wimbish only to review documents. Franco represented to the court that Torres never told Franco that he lacked the funds to hire the experts to testify in the trial

Franco stated that Torres paid approximately $800 for Dr. Platt's report but declined to pay approximately $2,500 to retain Dr. Platt to testify in the trial. Dr. Platt reviewed the standardized field sobriety test administration in this case and identified certain testing that had not been applied correctly. Franco used the information to cross-examine the arresting officer, but he did not call Dr. Platt as a witness because Torres did not provide the funds to retain Dr. Platt for that purpose.

Franco claimed that foregoing a motion to suppress and challenging the HGN test in a motion for directed verdict was a deliberate trial strategy.

Co-counsel Gilbert testified that his role was to assist Franco in the trial, not to conduct pre-trial investigation. The weekend before the trial, Franco informed him that Dr. Wimbish would not be present at the trial because he wanted $3,000 to testify.

**Ineffective Assistance of Counsel**

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel."

5

*Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Ex Parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)). To prevail on a claim of ineffective assistance of counsel, the appellant must meet a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986). The party alleging ineffective assistance has the burden to develop facts and details necessary to support the claim. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We apply a "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson*, 9 S.W.3d at 813 (citations omitted). We review counsel's effectiveness not by isolated acts or omissions, but by the totality of the representation, from the viewpoint of the attorney at the time he acted and not through hindsight. *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012). An appellant must demonstrate a reasonable probability that but for his counsel's errors, the outcome would have been different. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (citation omitted).

Torres argues trial counsel rendered deficient performance when he failed to obtain discovery from the DPS, have it reviewed by the retained expert, and failed to obtain a ruling on his motion to suppress the results of the HGN test. He contends there is no plausible basis for failing to conduct an independent investigation of the State's evidence. He argues that trial counsel should have looked for other toxicologists who would have testified for less money. Torres argues trial counsel should have obtained the DPS records and reviewed them himself to determine if there was information in the records that could be used to advance a viable defense. Because trial counsel failed to obtain a ruling on his motion to suppress, Torres argues the State used the evidence when it argued the jury should find Torres guilty.

A defendant who retains counsel but becomes indigent during the pendency of his case is entitled to the assistance of a state-funded expert. *Ex parte Briggs*, 187 S.W.3d 458, 468–69 (Tex. Crim. App. 2005) (citing *Ake v. Oklahoma*, 470 U.S. 68 (1985). In this case, however, the testimony in the hearing on the motion for new trial shows Torres was not ever shown to be indigent, but he made the decision not to hire experts to testify after determining the additional expense was not justified for his DWI defense. And to establish ineffective assistance of counsel for failing to call expert witnesses, the defendant must show that he would have benefitted from their testimony. *Ex parte Flores*, 387 S.W.3d 626, 638 n.54 (Tex. Crim. App. 2012)

7

(citation omitted). Absent such evidence, an attorney's failure to call a witness does not establish that trial counsel was ineffective. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) (citing *Hunnicutt v. State*, 531 S.W.2d 618 (Tex. Crim. App. 1976)).

In the motion for new trial hearing, Torres failed to prove he did not pay for the testimony of expert witnesses because of his indigence. Secondly, Torres failed to show that Dr. Wimbish and Dr. Platt were available to testify at his trial. Thirdly, Torres neither produced the DPS records for the hearing nor did he show that those records would have supported his defense. Because the record does not establish that the alleged negligent performance by trial counsel prejudiced Torres's defense, we overrule issues one and two. *See Strickland*, 466 U.S. at 687, 694.

**Insufficient Evidence**

When there is a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895, 902 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307)) (concluding the *Jackson* standard "is the only standard that a reviewing court should apply" when examining the sufficiency of the evidence); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App.

8

2007) (citations omitted). The jury is the sole judge of the witnesses' credibility and weight to be given to their testimony. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citations omitted). A jury may draw multiple reasonable inferences so long as each inference is supported by the evidence presented at trial. *Id.*; *Hooper*, 214 S.W.3d at 15. Accordingly, we are required to defer to the factfinder's determinations of the credibility of the witnesses and the weight to be given to their testimony. *See Brooks*, 323 S.W.3d at 899.

In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Id.* (citing *Jackson*, 443 U.S. at 326). Although we defer to the jury's resolution of the facts, our review is to determine whether the jury's inferences from the facts that were before it were "'reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 16–17). Generally, in a sufficiency review, the appeals court is required to uphold the jury's verdict "unless a reasonable juror must have had a reasonable doubt as to at least one of the elements of the offense." *Runningwolf v.*

9

*State*, 360 S.W.3d 490, 494 (Tex. Crim. App. 2012) (citing *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992)). "If we find the evidence insufficient, we must reverse the judgment and enter an order of acquittal." *Skillern v. State*, 355 S.W.3d 262, 268 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citations omitted).

"Intoxicated" is defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body . . . ." Tex. Penal Code Ann. § 49.01(2)(A) (West 2011). Torres contends the State failed to prove beyond a reasonable doubt that he was intoxicated while operating a motor vehicle in a public place. Torres argues that having glassy, bloodshot eyes, while a possible sign of intoxication, without more, does not conclusively prove a person is intoxicated. Torres argues Deputy Terrell's failure to properly administer the HGN test undermined the reliability of the results of the test. Torres contends his performance on the field sobriety tests showed too few clues to establish probable cause and consequently cannot support a reasonable inference of intoxication. He argues the blood test results are unreliable because the forensic scientist used data in his retrograde extrapolation estimate that deviated from the record.

We must presume that the jury resolved all inferences in favor of the verdict. *Clayton*, 235 S.W.3d at 778. The circumstances that the jury could consider in determining whether Torres was intoxicated while driving include Deputy Terrell's observation of signs of intoxication, testimony that Torres smelled of alcohol and had bloodshot eyes, Deputy Terrell's observation of six out of six clues on the HGN test, receipts that allowed the jury to infer that Torres had purchased many alcoholic beverages at several establishments that night, and Torres's description of his own level of intoxication at between a four and one-half to a five on a scale of zero to ten, with zero being not at all intoxicated and ten being passed out on the ground. Deputy Terrell's alleged error while administering the HGN test went to the weight of the evidence to be considered by the jury.

The jury also heard evidence that a sample of Torres's blood was seized and submitted for forensic testing that showed that Torres's BAC exceeded the legal limit when the sample was drawn. A blood alcohol test result showing that the defendant exceeded the legal limits at the time of the blood draw, considered with other indicia of intoxication at the time of the traffic stop, may logically support an inference that the defendant was driving while intoxicated. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). The jury heard expert testimony concerning the factors for retrograde extrapolation and Ho's opinion that Torres's

11

BAC was even higher when he was driving. The alleged deficiencies raised by Torres on cross-examination would go to the weight of the evidence relating to his blood sample to be considered by the jury.

The jury heard evidence that logically created an inference that Torres did not have the normal use of his mental or physical faculties when Deputy Terrell initiated the traffic stop and that his blood alcohol concentration exceeded the legal limit when he was driving. Based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict, we conclude the jury's verdict was reasonable. *See Hooper*, 214 S.W.3d at 16–17. We overrule issue three and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on April 1, 2019
Opinion Delivered August 28, 2019
Do Not Publish

Before Kreger, Horton and Johnson, JJ.